**UNITED STATES of America, Plaintiff,**

v.

**ERNST & WHINNEY, a partnership, et al., Defendants.**

**Civ. A. No. C82–501A.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 18, 1983.

James E. Baker, U.S. Atty., Atlanta, Ga., for plaintiff.

Trammell E. Vickery, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Daniel F. Kolb, Davis, Polk & Wardwell, Washington, D.C., for defendants.

## ORDER

### ROBERT H. HALL, District Judge.

On November 2, 1982, this court dismissed the government's injunction action against Ernst & Whinney ("E & W") alleging certain fraudulent practices by the accounting firm in conducting a service known as the Investment Tax Credit Study. Following the court's dismissal of the action for failure to state a claim upon which relief can be granted, E & W moved to amend the judgment to include an award of attorneys' fees. The government opposed this claim and moved that if the motion for attorneys' fees were not summarily denied, that further proceedings on the matter of fees be held in abeyance pending the government's appeal of the November 2 order. Also under consideration is the government's opposition to E & W's bill of costs seeking taxation of $26,883.56 against the United States for the preparation of four large exhibit volumes.

## I. ATTORNEYS' FEES

E & W seeks an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. Until October 1, 1981, that statute prohibited the imposition of attorneys' fees upon the United States, except as authorized by other statutes. The Equal Access to Justice Act amended § 2412 to authorize recovery of expenses and attorneys' fees from the United States in certain circumstances.

The section under which E & W seeks attorneys' fees, § 2412(b), renders the United States liable for fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."[1] The general "American rule" bars prevailing litigants from recovering attorneys' fees from the losing party. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1974). The "bad faith" exception to this rule, asserted by E & W here, permits an award of attorneys' fees when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 257–59, 95 S.Ct. at 1621–22.

E & W alleges essentially two types of conduct by the government in this case which it contends constitute bad faith. First, it alleges that the government required it to litigate needlessly in order to sustain a clear right. Second, E & W alleges that the government required it to needlessly engage in duplicative litigation. The government refutes these contentions, and argues that a finding of bad faith requires clear evidence that the claim made was entirely without color and that it was made for some improper purpose.[2]

■ There appears to be some question concerning the proper standard for determining whether to award attorneys' fees for "bad faith." E & W argues that a finding of subjective bad faith is not required. The Eleventh Circuit has so held in cases not directly involving § 2412(b), but involving the bad faith exception to the general American rule. *See Brown v. City of Palmetto,* 681 F.2d 1325, 1327 (11th Cir. 1982); *Doe v. Busbee,* 684 F.2d 1375, 1379 (11th Cir.1982). Thus, seemingly subjective bad faith is not required. It is not necessary for the court to resolve this question,

---

**1.** 28 U.S.C. § 2412(b) states:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

**2.** The government does not dispute that E & W is a "prevailing party" under 28 U.S.C. § 2412(b).

however, because there is no basis for a finding of either objective or subjective bad faith against the government in prosecuting the action against E & W.

E & W's argument that the government acted in bad faith in forcing it to litigate a clearly defined statutory right is grounded on the government's failure to withdraw its suit or any part of it after E & W posted bond under 26 U.S.C. § 7407(c) of the Internal Revenue Code. E & W argues that since it was clear that at least some of the conduct alleged by the government was covered by the bond, thereby precluding an injunction against such conduct, the government should have withdrawn at least part of the suit. Its failure to do so, E & W argues, forced it to needlessly litigate its clear rights.

The government's response to this argument, in opposing the motion to dismiss and now, is that whereas §§ 6694 and 7407(b)(1)(A) are addressed to individual understatements of tax liability, a pattern or practice of understatements falls outside these sections. The government argues that such conduct falls within § 7407(b)(1)(D) covering "any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws," and not subject to the bonding provision. Other conduct the government alleges which it argues falls outside 7407(b)(1)(A) and thus within (D) includes E & W's alleged practice of using arcane and obscure terms to describe components claimed for the investment tax credit, and the alleged practice of creating a muddled or broken audit trail.

Although the court disagreed with the government's position, finding that all the conduct alleged was ultimately designed to understate tax liability and therefore came within § 7407(b)(1)(A), such a result was by no means clear from the outset. Rather, the court, aided by the thorough arguments of both parties, was required to closely ex-amine all relevant sources to reach its conclusion. Indeed, the court specifically stated that it is not clear what conduct is covered by § 7407(b)(1)(D). The court could conclude only that conduct, whether a pattern or practice or individual acts, ultimately designed to understate liability is covered by § 7407(b)(1)(A) and thus the bonding provision.[3]

As the government has shown, the instant case is the only § 7407 case ever brought by the United States in which the defendants filed the statutory bond provided for by § 7407(c). Thus, there is no precedent on what is bondable and non-bondable conduct. The government has also shown that its arguments were presented for the first time in this suit after careful consideration by government officials. In these circumstances, the words of the Seventh Circuit in *Adams v. Carlson,* 521 F.2d 168, 170 (7th Cir.1975) are most appropriate:

> It is true that the defendants litigated vigorously. The area of litigation, however, is one of expanding and developing concepts. Vigorous litigation in an area on which the law is so unsettled should not be equated with obduracy, wantonness, vexatiousness or oppression.

Nor was the government's alternative argument under § 7402(a) without a colorable basis. That argument was that insofar as E & W was determined not to be a statutorily defined "return preparer," the court had jurisdiction to enjoin the conduct under § 7402(a). That section gives district courts jurisdiction to issue injunctions to enforce the internal revenue laws and provides that the remedy is in addition to other remedies. Although the court disagreed with this government argument as well, this is not determinative. The question is whether the position had reasonable legal support. *See Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980).

---

**3.** The circumstances of this case do not begin to approach those in the cases cited by E & W in which bad faith by forcing a party to litigate a clear right was found. *See Haycraft v. Hol-lenbach,* 606 F.2d 128 (6th Cir.1979); *Fitzgerald v. Hampton,* 545 F.Supp. 53 (D.D.C.1982); *Miller v. Aacon Auto Transport, Inc.,* 447 F.Supp. 1201 (S.D.Fla.1978).

A cursory reading of the November 2 order reveals the difficult question of law posed by the government's § 7402(a) position. Only one case in point was found and although it was contrary to the government's view, the district court opinion cannot possibly be viewed as so conclusive or authoritative as to preclude the contrary argument in another case before another court. The lack of relevant case law and the broad language of the statute require the conclusion that the government's claim under § 7402(a) was at least colorable.

Additionally, it is clear that the government's suit had a colorable factual basis. In *Nemeroff, supra,* the court held that the question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established. The factual basis of the government's case is amply demonstrated by the numerous exhibits and affidavits accompanying the complaint and the motions for a preliminary injunction and partial summary judgment. A brief review of these materials, revealing terminology used by E & W to describe certain components claimed for the investment tax credit, demonstrates that a reasonable attorney could certainly conclude that facts supporting the claim might be established. E & W's allegation of numerous government misstatements has been vigorously disputed by the government. In any event, a few misstatements are perhaps inevitable in a case challenging a practice of the scale of E & W's ITC study and cannot suffice to destroy the colorable factual basis of the suit or demonstrate improper motives.

E & W's second major argument is that the government showed bad faith in forcing E & W to needlessly engage in duplicative litigation. E & W relies on this court's decision in *Gordon v. Heimann,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98, 328 (N.D.Ga.1981), in which attorneys' fees were awarded because the plaintiff's conduct was designed to create needless work for the defendants and the court. E & W argues the government behaved in the same way here because it continued the injunction action despite its simultaneous prosecution of administrative penalty proceedings based on overlapping claims.

This argument cannot withstand scrutiny. The action in question was for an injunction, a type of relief quite different from the relatively small monetary fines that may be imposed in the administrative penalty proceedings. The injunction action clearly sought to call a halt to the alleged practices without litigating each case of understatement individually. It cannot be seriously contended that the government's conduct in this case even approached the extreme behavior in *Gordon,* in which numerous virtually identical complaints were filed with state and federal courts, and the court was deluged with motions and materials, many of which were irrelevant, designed to create needless work.

E & W's remaining contention is that the government showed bad faith in that it never seriously intended to pursue its motion for a preliminary injunction and put defendants to great trouble and expense because the motion called for an immediate response on the merits. E & W contends that the government demonstrated its lack of seriousness by effectively withdrawing the motion for a preliminary injunction and replacing it with a frivolous summary judgment motion.

However, the government did not "withdraw" its motion for a preliminary injunction, but rather replaced it with a motion for partial summary judgment when it became clear that early consideration of preliminary relief would not be forthcoming, largely due to E & W's tactics. Moreover, both motions were sufficiently supported by facts and law to rebut any argument that they were frivolous or without foundation. In short, none of the conduct during the litigation in this case rises to the level of that condemned in *Gordon* or *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178 (D.C.Cir.1980). Therefore, E & W's request for attorneys' fees is denied. In view of this ruling, it is unnecessary to consider the parties' other arguments, including the

government's motion to hold consideration of this matter in abeyance pending appeal of the November 2 order.

## II. COSTS

E & W filed a statutory bill of costs pursuant to 28 U.S.C. § 1920(4) for "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." The bill seeks taxation of $26,883.56 against the United States, which has objected to the bill and moved for review of taxation of these costs. The "papers" in question are four large exhibit volumes submitted by E & W in connection with its brief in opposition to the government's motion for a preliminary injunction and in support of E & W's own motion to dismiss.

The exhibit volumes contain photographs and documents relating to those items recommended for the ITC by E & W and challenged by the government. The government argues that the cost of photographs has not ordinarily been allowed as a taxable cost under § 1920(4), and in any event, that the expenditures were not necessary as required by the statute.

██ The majority of courts, however, seem to follow the view that the "expense of taking photographs should be classed as any other expenditure for preparation for trial." *Department of Highways v. McWilliams Dredging Co.,* 10 F.R.D. 107, 108 (W.D.La.1950), aff'd, 187 F.2d 61 (5th Cir. 1951); *see, e.g., Evans v. Fuller,* 94 F.R.D. 311, 315 (W.D.Ark.1982); *Welsch v. Likins,* 68 F.R.D. 589, 597 (D.Minn.1975), aff'd, 525 F.2d 987 (8th Cir.1975). Whether the costs are taxable depends not so much on the nature of the items, but rather whether the item for which costs are sought was "necessarily obtained for use in the case." 28 U.S.C. § 1920(4).

██ The court has wide discretion in determining whether particular items meet this standard. *Welsch, supra.* Some guidance is provided, however, from courts confronted with the problem of expenditures for photographs and similar material. The cases focus on whether the material was actually entered as evidence. That it does not automatically disqualify the material for the taxation of costs, but serves as a good indicator of necessity. *See, e.g., Evans, supra; Welsch, supra.* Additionally, courts focus on the failure of a party to seek prior approval from the court for expenses sought to be taxed to the opposing party. *See, e.g., Evans, supra; Esler v. Safeway Stores, Inc.,* 77 F.R.D. 479, 483 (W.D.Mo.1978).

██ The court concludes that both of these factors support the denial of E & W's bill of costs on the facts of this case. As mentioned above, the four exhibit volumes were filed in connection with E & W's opposition brief to the government's motion for a preliminary injunction. However, instead of limiting itself to meeting the government's request for a preliminary injunction, E & W took on the task of proving, at this early stage of the proceeding, that the ultimate relief requested, a permanent injunction, would have to be denied. Thus, E & W attempted to rebut each and every allegation of misleading practices made by the government. In so doing, E & W largely relied on affidavits, but also occasionally referred to the photographs now in question.

Since this court granted E & W's motion to dismiss, no trial was ever held and none of the material in question admitted into evidence. Nor did its preparation seem necessary for consideration of E & W's opposition to a preliminary injunction. E & W advanced numerous other arguments to oppose this motion, and was not required to conclusively rebut every government allegation at this early stage. The affidavits used and the government exhibits already in the record would have more than sufficed for purposes of the preliminary injunction.

The exhibit volumes may have been helpful to E & W's argument, but the court cannot conclude that this large expenditure on its part was necessary. As the *McWilliams* court stated:

However convenient [the pictures] may have been for the defendant's side, there

must be a limitation upon the extent to which a litigant or his counsel can go in such preparation, if it is to be taxed against his opponent. The pictures were not indispensable to the development of the case.

*McWilliams Dredging Co., supra,* at 108. Seeking prior authorization from the court for expenditures such as these can help a party avoid the obvious problem of determining in advance what expenditures will be taxable. E & W's failure to seek such approval supports the court's conclusion that its bill of costs must be DENIED.

In sum, E & W's motion to amend the judgment to include an award of attorneys' fees is DENIED and its bill of costs is also DENIED.