**GOODWIN BROTHERS LEASING, INC., Plaintiff**

v.

**The CITIZENS BANK, Douglasville, Georgia, Defendant-Third Party Plaintiff Appellee,**

v.

**William C. McKINNEY et al., Defendants-Third Party Defendants Appellants.**

**No. 76–3283.**

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1979.

---

Arthur Gregory, Richard F. Williamson, Thomas W. Thrash, Atlanta, Ga., for defendants-third party defendants appellants.

Paul M. Hawkins, Howell Hollis, III, Atlanta Ga., Noland & Coney, Robert J. Noland, Douglasville, Ga., for defendant-third party plaintiff appellee.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

VANCE, Circuit Judge:

William C. McKinney was found liable in the amount of $60,000.00 to The Citizens Bank of Douglasville, Georgia, on a guarantee agreement he executed in favor of the bank. He appeals, asserting that his obligation under the guarantee was limited by a purported letter of modification and that the trial judge erred in taxing certain court costs to him. We uphold the jury's decision that no modification took place, but we find that a portion of the costs assessed was excessive.

This action was originally brought by Goodwin Brothers Leasing, Inc. (Goodwin Brothers) against Citizens Bank, seeking recovery on a letter of credit issued by the bank.[1] Citizens Bank impleaded McKinney and Samuel Timms, unconditional guarantors of monies advanced under the letter of credit.

The letter was issued to provide security for Goodwin Brothers on its equipment lease agreement with Timms Mills, Inc. Before granting the letter of credit, however, Citizens Bank sought to insure that any monies it advanced pursuant to the letter of credit would be repaid. It required the guarantees of both Timms, the mill owner, and McKinney, his friend and the person who had sold the mill to Timms. McKinney testified that he and Timms discussed his guarantee only to the extent of six monthly payments owed by Timms Mills

---

1. The trial court correctly granted Goodwin Brothers' motion for summary judgment against Citizens Bank. The judgment was compromised and settled for $60,000.00.

under its lease with Goodwin Brothers.[2] This arrangement, however, clearly was not expressed in the guarantee or in subsequent writings.

The letter of credit was executed June 15, 1973, in a meeting held at Citizens Bank. Present were Robert Stewart, bank president; Robert Nolan, bank attorney; Timms; McKinney; Alvin Couch, president of Timms Mills, and its attorney, Bill Green. The operative portions of the letter appear below.[3] An unconditional guarantee was also executed by Timms and McKinney.[4] At the close of the meeting, the letter of credit was given either to Timms or to Couch.

Later that day, McKinney sent a letter to Citizens Bank [5] in which he stated,

> My agreement is to guarantee the performance of Timms Mills under the lease arrangement during the 6 months Timms

**2.** The lease provided for one initial rental payment of $4,090.86 to be applied to the last three months of the lease; 69 monthly rental installments each in the amount of $1,363.62 per month; and three subsequent annual rental installments each in the amount of $2,647.80. Payments were to begin on December 19, 1972. The agreement also contained an acceleration clause.

**3.**

> Goodwin Brothers Leasing, Inc.
> 444 East Main Street
> Lexington, Kentucky 40507
>            THIS LETTER OF CREDIT
>            EXPIRES SIX (6) MONTHS
>            FROM THE ABOVE
>            DATE OF 6/15/73
> Dear Sir:
>    We hereby authorize you to draw on THE CITIZENS BANK, Douglasville, Georgia 30134 for account of TIMMS MILLS, INC., Douglasville, Georgia 30134, up to an amount of $72,000.00 (Seventy-two Thousand Dollars and No Cents) available by draft(s) at sight for 100% invoice cost accompanied by Invoice in duplicate.
>    We hereby agree with drawer, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of this credit, that such drafts will be duly honored on presentation and delivery of documents as specified to the drawee.

**4.**    For value received, the undersigned (who if two or more shall be jointly and severally liable hereunder) hereby unconditionally guarantee(s) the payment of the monies advanced under the above stated line of credit.

will be paying Walters. As soon as this debt is satisfied or at 12/31/73, my guarantee will automatically be withdrawn. McKinney's letter was received either on the following day or on the next Monday, June 18. Upon its receipt, Stewart telephoned Nolan and informed him that he had received a letter from McKinney, but nothing further was done. Also on June 18, Phillip Scott, attorney for Goodwin Brothers, telephoned Nolan to confirm that Citizens Bank would be issuing the letter of credit.[6]

Goodwin Brothers actually received the letter on Tuesday, June 19, when Scott traveled to Cartersville, Georgia and met with representatives of Timms Mills. This marked the first time that a representative of Goodwin Brothers had received the letter of credit or had learned of its issuance.

> /s/ _Sam Timms_
> Sam Timms
> TIMMS MILLS, INC.
> /s/ _W.C. McKinney_
> William McKinney

**5.** The full text of the letter was as follows:
> Dear Bob;
> My guarantee on the letter of credit drawn up by you in favor of Goodwin Brothers Leasing Inc., today is valid under the following understanding with Sam Timms.
> Sam is pressured to pay a debt of $60,000 to Walters Carpet Mills of California for raw materials. Debtor has agreed to give Timms a 6months [sic] payout period providing Sam will Assign them a second mortgage on the buildings and land of Timms Mills. This position is presently owned by Goodwin Brothers, who will not release it without additional collateral. This request will be satisfied with a letter of credit from Citizens Bank. The L/C will have an expiration date of 6 months hence, at which time Timms will have paid Walters the $60,000 and Goodwin will again be awarded a second lein [sic] on the buildings and land of Timms Mills. My agreement is to guarantee the performance of Timms Mills under the lease arrangement during the 6 months Timms will be paying Walters. As soon as this debt is satisfied or at 12/31/73, my guarantee will automatically be withdrawn.
> If there are any questions, please call me.

**6.** Apparently, Nolan did not confirm that a credit already had been issued but only that one would be issued.

Timms Mills met its lease obligations to Goodwin Brothers to the extent of making five monthly payments after the issuance of the letter of credit. Goodwin Brothers refused to accept a late sixth payment. Instead, it elected to accelerate the indebtedness under an applicable provision in the lease, and called on Citizens Bank for the full amount owed.

On December 13, 1973, prior to Goodwin Brothers' presentation of drafts to Citizens Bank, McKinney wrote a second letter to Citizens Bank.

Whatever obligation I may have to your bank with regards to a letter of credit dated June 15, 1973, issued by your bank in favor of Goodwin Brothers Leasing Inc. (Goodwin), is controlled by the terms and conditions of my letter to you dated June 15, 1973, a copy of which is enclosed herein. . . .

. . . . Although your bank might have the duty to pay under its letter of credit, such payment would not create liability on me to the bank because my agreement is a guarantee of lease payments and not payment for invoice representing goods presumably sold to Timms Mills by Goodwin.

On December 14, 1973, Goodwin Brothers submitted a draft in the amount of $66,-727.41 against the letter of credit, together with the required documentation. The bank refused to honor the draft, citing the failure of the guarantors to reimburse it for the full amount of the draft as justification for the refusal. Goodwin Brothers' action against Citizens Bank was then commenced.

McKinney's letter of June 15 can hardly be termed a modification of his unconditional guarantee. The letter speaks of "guarantee[ing] the performance of Timms Mills *under the lease arrangement* during the 6 months." (Emphasis added.) The letter does not state that the guarantee is limited only to the lease payments scheduled to accrue during the six months; nor does it mention $8,190.00, the aggregate amount of the scheduled payments. In fact, the at-

tempted amendment did not exclude McKinney's liability on the acceleration of the entire debt, an obligation incurred under the lease during the six months the guarantee was in effect.

■ The trial judge allowed the jury to determine whether a modification was made, following his instruction:

Now, under the evidence in this case, I believe you will be required to find for the plaintiff. The question will be as to whether or not you find for the plaintiff in the sum of $60,000 or in such lesser sum as you find that the defendant Mr. McKinney guaranteed the letter of credit. If you find that there was an effective modification of that letter of credit, then you would have to determine what the amount of that modification was and that would be the amount of your verdict; otherwise, it would be the amount of $60,000, which is the liability of the bank.

We find no error in this instruction or in the jury's determination that McKinney's letter did not modify his guarantee.

■ Even assuming *arguendo* that the language of the letter was sufficient to modify the guarantee agreement, we are not convinced that McKinney had the power to modify it unilaterally. McKinney maintains that he had the right to change his guarantee contract until the letter of credit had been issued to the beneficiary, Goodwin Brothers. Before the letter's issuance, he claims, the guarantee was unsupported by any consideration and thus could be modified or even revoked. While this statement of the law is partially correct, it does not fully convey the meaning of the Georgia statute governing the effective date of letters of credit. Section 109A–5–106(2) of the Code of Georgia Annotated [7] provides,

Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the

---

7. The Uniform Commercial Code was enacted in Georgia under Title 109A of the Code of Georgia Annotated. All U.C.C. references are preceded by § 109A.

beneficiary it can be modified or revoked only with his consent.

Thus, the bank became liable on the letter of credit when it issued the letter to its customer, Timms Mills. Once the letter of credit left its control and was established as regards the bank's customer, Timms Mills, the bank was powerless to modify or revoke it without Timms Mills' consent. *See Barclays Bank D. C. O. v. Mercantile National Bank*, 481 F.2d 1224 (5th Cir. 1973), *cert. dismissed*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). This detriment is sufficient consideration to support the contract of guaranty.

■ Further, McKinney fails to recognize a fundamental principle of contract law [8] upon which the rules of guaranty are based: "A contract depends upon the mutual consent of all of the parties thereto, and the provisions of a written agreement cannot be changed by the consent of less than all of them." *Spiegel v. Hays*, 103 Ga.App. 293, 119 S.E.2d 123, 128 (1961). McKinney did not obtain the consent either of the bank or of his co-guarantor, Timms, with whom he was jointly and severally liable on the guarantee. Because no mutual assent was given to the purported changes in the guarantee, effective modification could not have taken place.

Finally, McKinney complains that the trial court improperly taxed to him certain court costs incurred in deposing Phillip Scott, the attorney for Goodwin Brothers. Although McKinney recognizes the trial court's discretion to assess costs, *Breeland v. Hide-A-Way, Inc.*, 585 F.2d 716 (5th Cir. 1978); *Hodge v. Seiler*, 558 F.2d 284 (5th Cir. 1977); 28 U.S.C. § 1920, he asserts that this discretion was abused by the court's excessive awards of mileage and witness fees. For ease of discussion, each award will be treated separately.

■ The power of the trial judge to tax witness costs is conferred by 28 U.S.C. § 1920(3); however, the amount of mileage and witness fees that may be charged is governed by 28 U.S.C. § 1821. Historically, courts have held that the power to tax costs for travel expenses was limited to the area in which the court could issue subpoenas.[9] *See, e. g., Vincennes Steel Corp. v. Miller*, 94 F.2d 347 (5th Cir. 1938). In *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), the Supreme Court rejected strict application of that rule and recognized the discretion of the trial court to determine the amount of mileage costs allowed. Subsequent cases have limited taxation of witness travel costs to 100 miles absent special circumstances. The relevance and necessity of the witnesses' testimony, *Kaiser Industries Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5, 10 (E.D.Mich.1970); *Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. 158, 161 (S.D.N.Y.1969), and the existence of court approval before the incurrence of travel expenses, *Farmer v. Arabian American Oil Co., supra*, are to be considered in determining whether special circumstances are present. Scott, a disinterested third party, was an important witness whose testimony was cited in both parties' arguments on appeal. Counsel for Citizens Bank sought and obtained court approval for taking the deposition. We conclude that the district court did not abuse its discretion in allowing travel fees beyond the 100 mile limit.

---

8. The guarantee issued by McKinney and Timms, although a factor in the issuance of the letter of credit, maintains an independent character, separate from the letter of credit itself. *See Pringle-Associated Mortgage Corp. v. Southern Nat'l Bank*, 571 F.2d 871 (5th Cir. 1978); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461 (2d Cir. 1970).

9. Fed.R.Civ.P. 45(e)(1) provides,
  At the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of the district court for the district in which the hearing or trial is held. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena; and, when a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place.

The trial court also taxed McKinney with one-half of Scott's witness fee. Scott claimed $250 as his fee for giving a deposition. Section 1821 limits the amount of witness fees and makes no provision for the trial court's award to exceed that amount. Nothing over the statutory amount is recoverable. *See Dunn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 279 F.Supp. 937 (S.D. N.Y.1968). *See generally* 10 *C.Wright & A.Miller, Federal Practice and Procedure,* § 2678 (1973). The witness fee must be reduced by the amount that it exceeds the statutory maximum.

AFFIRMED AND REMANDED FOR THE RETAXING OF COSTS.