Eligio CASTRO, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. No. 83–3001(PG).

United States District Court,
D. Puerto Rico.

Feb. 11, 1985.

Eligio Castro, pro se.

Osvaldo Carlo Linares, Asst. U.S. Atty., Rio Piedras, P.R., Ingeborg Chaly, Washington, D.C., for defendants.

Arthur L. Beamon, Ingeborg G. Chaly, Marybeth Triano, Washington, D.C., for FDIC.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

On April 6, 1984, we entered an Opinion and Order dismissing, with prejudice, plain-

tiffs' action and enjoining plaintiffs Eligio Castro and Rafael Díaz Díaz from filing any additional pleadings in this case and from commencing any new action against the United States or the Federal Deposit Insurance Corporation (FDIC) with respect to the nonrenewal of their temporary appointments with the FDIC.[1]  In our Opinion and Order we advised plaintiffs that any violation by them of the injunction could result in the imposition of a fine and/or imprisonment as punishment for contempt of this Court, and, further that should they feel that our order was wrong, their remedy was to file an appeal to the First Circuit rather than a new lawsuit in the district court.  Costs were assessed against plaintiffs.

The case is once more before us upon several motions filed by plaintiffs requesting that they be exempted from the injunction for the purpose of objecting to the taxation of costs by the Clerk and for other matters.  From our review of the record it appears that a controversy has been generated regarding the taxation of costs; specifically, with relation to the question whether plaintiffs have been impeded from making their objections thereto because of the operation of the injunction issued by us on April 6, 1984.  In the interest of setting the record straight once and for all, we will proceed to outline in detail the proceedings in this case since we issued our Opinion and Order on April 6.

Judgment was entered by the Clerk of the Court on April 16, 1984.  Thereafter, on May 9, 1974, defendants filed their verified Bill of Costs,[2] as required by 28 U.S.C. §§ 1920 and 1924, and Rule 331.1 of the Local Rules of the United States District Court for the District of Puerto Rico (1984). The Clerk then entered an order setting defendants' Bill of Costs for taxation before the Chief Deputy Clerk, Juan M. Masini Soler, on August 9, 1984, and advising plaintiffs that they could submit their ob-

---

1.  The Court's opinion is reported at 584 F.Supp. 252 (D.P.R.1984).

2.  Contrary to plaintiffs' assertion in their "Motion for Review of Taxation Hearing", filed with

this Court on December 21, 1984, the bill of costs was adequately verified by attorney Ingeborg Chaly as required by 28 U.S.C. § 1924.

jections to the taxation of any or all items claimed by defendant at that time.

The meeting for taxation of costs was held as scheduled on August 9. As it appears from the Minutes of the meeting and from the Sworn Statement of Juan M. Masini-Soler, Chief Deputy Clerk (hereafter, "Statement of Masini"), attached to defendants' "Motion Requesting Order" of February 1, 1985, plaintiff Castro appeared *pro se* and defendants were represented by Assistant U.S. Attorneys Osvaldo Carlo Linares and Celestino Matta; plaintiff Díaz Díaz did not appear. At said meeting, Chief Deputy Clerk Masini heard the parties' arguments, *including* plaintiff Castro's opposition to the taxation of costs—to the effect that he understood that he could not elaborate on his objections because he had been enjoined from filing any additional pleadings. The Chief Deputy Clerk informed plaintiff Castro that the taxation proceeding was completely independent from the injunction issued by the Court and that, therefore, he could present all objections deemed pertinent. Defense attorneys concurred with Mr. Masini's explanation and so informed plaintiff Castro. Notwithstanding the clear explanations given by the Chief Deputy Clerk, plaintiff Castro refused to participate in the taxation proceeding and left the meeting. Despite Castro's departure, the Chief Deputy Clerk noted his verbal objections and proceeded to tax the costs claimed by defendants. Although defendants requested a total of $2,369.64, Mr. Masini taxed costs only in the amount of $1,396.95; *i.e.*, almost $1,000.00 less ($972.69, to be exact) than the requested amount.

In the interim, plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the First Circuit on April 10, 1984; appeal was taken from our April 6 Opinion and Order dismissing their case and enjoining them from filing further pleadings in this case. To the best of our knowledge, plaintiffs' appeal is still pending before the Court of Appeals. However, we are aware of the fact that the Court has ruled upon several motions to lift the district court's injunction and petitions for writs of manda-

mus filed by appellants (plaintiffs herein), denying the same. For instance, on August 24, 1984, the Court of Appeals issued an order denying a "Motion to Lift the Injunction" filed by plaintiffs-appellants. In said order, the Court informed appellants, as they had been informed by Chief Deputy Clerk Masini, that the filing in the district court "of an objection [presumably, to the taxation of costs] at the request of the Court does not come within the term of the injunction and appellants may file their objection without fear of being found in contempt." *See,* Attachment 1 to plaintiff Castro's "Objection and Request for Exemption from District Court's Injunction", filed on September 12, 1984. In the same order, the Court of Appeals advised appellants to file all future requests for exemption from the district court's injunction in the district court.

Thereafter, on September 12, 1984, plaintiff Castro filed the first of a series of motions—some of which were filed jointly with plaintiff Díaz Díaz—requesting (1) exemptions from the injunction and (2) reconsideration of the taxation of costs. Defendants filed an opposition thereto. In his September 12 motion, as well as in several other motions filed with this Court, plaintiff Castro states that he appeared at the August 9 meeting for taxation of costs and informed the Chief Deputy Clerk that because of the April 6 injunction he was prohibited from objecting to the taxation of costs. Castro then seems to argue that because the Court of Appeals established in its August 24 Order (mentioned above) that he is free to file his objections to the taxation of costs this Court should "grant a reconsideration for taxation of costs." Finally, plaintiff asks this Court to inform him whether a number of "potential suits" (loosely described on page 2 of his motion) are exempted from the injunction.

It seems to us that plaintiff Castro is reading far more into the Court of Appeals' order than it provides for. In its order, the Court of Appeals simply confirmed what the Chief Deputy Clerk had

told plaintiff Castro during the meeting for taxation of costs to the effect that he could file his objections without fear of being found in contempt. The fact remains that Castro was never prohibited from filing his objections, but, rather, that he himself chose *not* to do so. In addition, that the Court of Appeals advised plaintiffs to file all future requests for exemption from the injunction in the district court, does not mean, as plaintiffs apparently believe, that they are free to request from this Court an opinion on whether the injunction would bar them from filing any imaginable "potential suit" (to borrow plaintiffs' term) which they could, now or in an undetermined future, bring against the defendants herein. As defendants very well point out in their opposition, the request made by Castro that we inform him whether a number of "potential suits" are exempted from the injunction, amounts to a request for an advisory opinion and, thus, is one that we are not about to grant. It is settled that federal courts are forbidden by Article III of the United States Constitution from giving advisory opinions. *Boston Chapter, NAACP v. Beecher,* 716 F.2d 931, 933 (1st Cir.1983). *Cf., Fagot v. Federal Deposit Insurance Corporation,* 584 F.Supp. 1168, 1179–80 (D.P.R.1984); *Pérez v. Secretary of Health, Education and Welfare,* 354 F.Supp. 1342, 1345–46 (D.P.R.1972).

Consequently, plaintiff Castro's request for an exemption from the injunction, as presented in his motion of September 12, must be and is hereby DENIED. In the future, if plaintiffs would see fit to request an exemption from the injunction, they are hereby instructed that any such request should be explicit as to (1) the conduct sought to be exempted and (2) the reasons why such an exemption is warranted. Plaintiffs have the burden of demonstrating to the Court that the purported conduct is in fact *not* an attempt to relitigate the issues determined by us in our Opinion and Order of April 6, 1984.

■ Now, with respect to the issue of the taxation of costs, we believe that it is important for us to reiterate, in the interest of fairness, that, contrary to plaintiff Castro's assertions, he was *never* prohibited from filing his objections to the costs claimed by defendants. In this respect, we believe that the record speaks for itself. As we explained above, the Chief Deputy Clerk specifically informed Castro that he could submit any objections he deemed pertinent and that the taxation proceeding was completely independent from the injunction. Notwithstanding, Castro chose to disregard the explanations given by Mr. Masini, and, following his own interpretation of the injunction, refused to participate in the taxation proceeding. That the Court of Appeals informed plaintiffs that they could file their objection to the taxation of costs without fear of being found in contempt does not operate as a modification of the injunction because, at any rate, plaintiffs were never enjoined from filing their objections. On the contrary, they were asked to do so, if they desired, and were told that they need not fear the injunction since the same did not apply to the filing of objections to the taxation. Moreover, we should also point out that, contrary to plaintiffs' assertions, the Court of Appeals has *not* modified our injunction in any way. As a matter of fact, the First Circuit has denied every motion to lift the injunction filed by plaintiffs in said court. The injunction issued by this Court on April 6 continues to be, to this date, in full force and effect.

Now, regardless of whether or not plaintiffs have met the requirements set out in the Federal Rules of Civil Procedure and in the Local Rules of this Court for seeking review from the Clerk's taxation of costs, we will proceed to review the taxation of costs as effected by the Clerk in this case in the interest of settling once and for all the controversy over the costs—a controversy which, for the most part, has been created by plaintiffs. But first, we will briefly outline the legal standards that will guide our review.

■ Taxation of costs is in the first instance performed by the Clerk of the Court and his decision is reviewable by the Court pursuant to Federal Rule of Civil

Procedure 54(d). The Supreme Court of the United States has indicated that on review of the Clerk's assessment of costs it is the district judge's "responsibility to decide the cost question himself" and that he must exercise his own discretion. *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 233, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). Further, the most important principle underlying any taxation of costs controversy is that the taxing of costs in federal courts is a matter addressed to the sound discretion of the district court, unless, of course, the matter is specifically controlled by a federal statute or rule. Thus, the taxation of costs is largely a matter of trial court discretion. However, the Supreme Court warned in *Farmer, supra,* that Rule 54(d) does not give the courts unrestrained discretion. Rather, the Court stated, "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses *not* specifically allowed by statute." 379 U.S. at 235, 85 S.Ct. at 416 (emphasis added).

The general federal statutes on costs and fees are 28 U.S.C. §§ 1911 through 1929. The statute of most general applicability and of most relevancy to this case is 28 U.S.C. § 1920. It provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplication and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Now, in light of the above standards, we may proceed to review the taxation of costs as effected by the Clerk in this case.

Defendants' bill of costs totalled $2,369.64, this figure representing the court reporter fees for the transcript of the preliminary injunction hearing ($135.00), the witness attendance fees ($60) paid to witness George Turrentine pursuant to 28 U.S.C. § 1821(b), the expenses incurred for witness Turrentine ($1,849.64) and the fees for exemplification and copies of papers needed for the case ($325). As is evident from this list, the items of cost claimed by defendants are all within the provisions of 28 U.S.C. § 1920, *i.e.,* they are all expenses which are specifically allowed by statute. Thus, this is not a case in which the Court's discretion should be "sparingly exercised". Instead, we should scrutinize the different items of cost to determine if they are reasonable and/or if they were necessarily incurred by defendants in the prosecution of this case. 28 U.S.C. § 1924.

■ First, the fees of the court reporter for the transcript of the preliminary injunction hearing are recoverable upon a proper showing that they were necessarily incurred in the case. *See, Wahl v. Carrier Manufacturing Co., Inc.,* 511 F.2d 209, 217 (7th Cir.1975). We are satisfied that the transcript was "necessarily obtained for use in the case", 28 U.S.C. § 1920(2), since the same was crucial in our handling of the case.

■ Second, the attendance fees paid to witness George Turrentine are also recoverable since defendants were required by statute to pay said fees. Section 1920 of Title 28 provides the general authority for awarding the "fees and disbursements for ... witnesses." But it is Section 1821 of Title 28 which governs the attendance, mileage, and subsistence allowance to be paid to witnesses who must appear in court. Section 1821 provides, in pertinent part, as follows:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States ... shall be paid the fees and allowances provided by this section.

\*     \*     \*     \*     \*     \*

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

In this case, witness Turrentine was present in Court for the preliminary injunction hearing the morning of Friday, February 24, 1984. The day before the hearing was "necessarily occupied" by the witness in going to the place of attendance. We further find that Turrentine's testimony was relevant and material to the issues involved in this case and was reasonably necessary to their disposition. *See, Federal Savings and Loan Insurance Corp. v. Szarabajka,* 330 F.Supp. 1202, 1209 (D.C. Ill.1971). Therefore, witness Turrentine was entitled pursuant to § 1821(b) to an attendance fee of $60, and defendants are entitled to recover said fee since it represents an expense which was necessarily incurred in this case.

■ Third, defendants claimed the sum of $1,849.64 as expenses for witness Turrentine's trip to Puerto Rico from Washington, D.C., this figure representing $949.20 for transportation, $813.90 for lodging, and the remainder $86.54 for miscellaneous expenses such as taxi fares and parking charges. As stated above, various aspects of witness fees are controlled by 28 U.S.C. § 1821. Regarding travel expenses, § 1821 provides, in pertinent part, as follows:

(c)(1) A witness who travels by common carrier shall be paid the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available.

\*     \*     \*     \*     \*     \*

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title.

(d)(1) A subsistence allowance shall be paid to a witness (other than a witness who is incarcerated) when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

\*     \*     \*     \*     \*     \*

(3) A subsistence allowance for a witness attending in an area designated by the Administrator of General Services as a high-cost area shall be paid in an amount not to exceed the maximum actual subsistence allowance prescribed by the Administrator, pursuant to section 5702(c)(B) of title 5, for official travel in such area by employees of the Federal Government.

As can be seen, the statute provides that a witness travelling by common carrier shall be paid the *actual expenses* of travel, based on the most economical rate reasonably available. Besides, the statute provides that all normal travel expenses shall be taxable as costs pursuant to 28 U.S.C. § 1920. In this case, witness Turrentine traveled to Puerto Rico by common carrier (a commercial airline), albeit *not* at the most economical rate reasonably available, *i.e.,* the witness traveled first class instead of coach. Accordingly, pursuant to the statute the defendants are entitled to recover as costs the equivalent of a round-

trip coach ticket, and this was precisely the amount which Chief Deputy Clerk Masini taxed as costs when he reduced the transportation expenses claimed by defendants for witness Turrentine from $949.20 (first class ticket) to $298.47 (coach ticket).[3] *See* Statement of Masini, p. 2. Had we been called upon to make the initial determination as to costs, we would have made the same reduction as the Clerk. Thus, the transportation expenses are taxed at $298.47 in favor of defendants.

■ A question remains as to whether a district court's discretion to award witness transportation costs is restricted by the 100 mile service-of-process limit. Historically, courts have held that the power to tax costs for travel expenses was limited to the area in which the court could issue subpoenas.[4] *See, e.g., Vincennes Steel Corp. v. Miller,* 94 F.2d 347 (5th Cir.1938). However, in *Farmer v. Arabian American Oil Co., supra,* the Supreme Court rejected a strict application of that rule and recognized the discretion of the district court to determine the amount of mileage costs allowed. Thus, after *Farmer,* most courts have recognized that an award of travel expenses beyond the 100-mile subpoena power of the court is within their discretion; but said 100-mile limitation is one factor to be considered in the exercise of discretion. *See, e.g., Simmons v. McLean Trucking Co.,* 100 F.R.D. 61 (D.Ga.1983); *Shevin v. Lederman,* 92 F.R.D. 752 (D.Colo.1981). The relevance and necessity of the witness's testimony are to be considered in determining whether to allow travel expenses beyond the 100-mile limit. *Goodwin Brothers Leasing, Inc. v. Citizens Bank,* 587 F.2d 730, 734 (5th Cir. 1979). As previously stated, George Turrentine was an important witness whose testimony was relevant and material for the final disposition of the issues in this case. We do not feel that we would be abusing our discretion by allowing as costs the actual expenses of travel at the most economical airline rate then available ($298.47) for travel between Washington, D.C., and San Juan, Puerto Rico.

■ In addition to the transportation expenses of witness Turrentine, defendants sought to recover his hotel expenses in the amount of $813.90, said figure representing lodging at the Condado Beach Hotel from Thursday, February 23, 1984, until Monday, February 27, 1984, *i.e.,* 5 days. The preliminary injunction hearing took place on Friday, February 24, 1984. Therefore, Chief Deputy Clerk Masini reduced the hotel expenses from the claimed $813.90 to $488.34, which represented lodging for three days: the day before the hearing, the day of the hearing, and the day after the hearing. The subsistence allowance is not always restricted to the day or days upon which the witness actually testifies. *W.F. & John Barnes Co. v. International Harvester Co.,* 145 F.2d 915 (7th Cir.1944), *cert. denied,* 324 U.S. 850, 65 S.Ct. 687, 89 L.Ed. 1410 (1945). Rather, an allowance may include each day that is necessarily occupied in going to and returning from the place of attendance. *Esler v. Safeway Stores, Inc.,* 77 F.R.D. 479, 482 (W.D.Mo.1978). *See generally,* 10 Wright, Miller & Kane, *Federal Practice and Procedure,* § 2678 (1983). Clearly, three days is a reasonable period under the facts of this case. Although the Chief Deputy Clerk was correct in allowing costs only for a three-day stay, we find that the requested amount has yet to be reduced further to conform with the above-quoted subsistence allowance provision of 28 U.S.C. § 1821(d)(3) and with 5 U.S.C. § 5702(c) which provides for $75.00 per day witness subsistence allowance in a

---

**3.** Although the Statement reads $945.20, we believe that this must have been a typographical mistake since $949.20 was the amount stated in the travel voucher attached to defendants' bill of costs. At any rate, this does not make any difference since defendants are entitled to recover only the cost of a round-trip *coach* ticket rather than a first-class ticket.

**4.** Rule 45(e) of the Federal Rules of Civil Procedure provides, *inter alia,* that subpoenas compelling attendance of witnesses at trial cannot be served outside the judicial district more than 100 miles from the place of trial. The Court takes judicial notice of the fact that Washington, D.C., is more than 100 miles from ·San Juan, Puerto Rico, the place of witness' attendance.

high-cost area. *See, Raio v. American Airlines, Inc.,* 102 F.R.D. 608 (E.D.Pa. 1984). Section 1821 limits the amount of witness fees and makes no provision for the trial court's award to exceed that amount. Nothing over the statutory amount is recoverable. *See, Goodwin Brothers Leasing, Inc. v. Citizens Bank,* 587 F.2d at 735; *Dunn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 279 F.Supp. 937 (S.D.N.Y.1968). The witness fees must be reduced by the amount that they exceed the statutory maximum. Consequently, the hotel expenses are taxed at $225.00 in favor of defendants.

▉ In addition, the amount of $86.54 is taxed in favor of defendants representing the expenses incurred by witness Turrentine in taxicab fares, parking fees and mileage of privately owned vehicle. 28 U.S.C. § 1821(c)(3).

Finally, defendants claimed $325.00 as their fees for exemplification and copies of papers necessarily obtained for use in the case. These costs are specifically allowed to be taxed by 28 U.S.C. § 1920(4), and we do not find the requested sum unreasonable nor excessive. Thus, the cost of $325.00 is taxed in defendants' favor.

In summary, we allow the following expenses:

| | |
|---|---|
| Transcript of Preliminary Injunction Hearing | $135.00 |
| Witness Attendance Fees | 60.00 |
| Witness Expenses (travel, hotel parking, etc.) | 610.01 |
| Copies of Papers | 325.00 |
| TOTAL | $1130.01 |

We will now proceed to address several of the contentions made by plaintiffs in their motions. To begin with, plaintiffs' assertion to the effect that the meeting for taxation of costs scheduled by the Chief Deputy Clerk was merely a subterfuge utilized by the U.S. Attorney to "entrap" Castro to violate the injunction is but another example of the kind of unfounded allegations and accusations which led this Court to decree the injunction in the first place.

Plaintiffs also make reference in their various motions to alleged "vituperative attacks" by the Assistant U.S. Attorney against Castro, to a "bombardment" of this Court with a "barrage of motions" by defense attorneys, and argue that defense attorneys are abusing the legal process because they are illegally attempting to depose plaintiffs. The Court would like to inform plaintiffs that "the shoe fits on the other foot", *i.e.,* that it is plaintiffs who are making all kinds of unfounded accusations against the defense attorneys, who are "bombarding" this Court with a "barrage of motions", and finally, who are abusing the legal process. That plaintiffs have been allowed to prosecute this case *pro se* does not mean that they have been given a license to bad mouth defendants, opposing counsel, and yes, even this Court and officers of the Court. Plaintiffs are once more warned that this Court is not about to tolerate this type of conduct by a litigant, even a *pro se* litigant, and that if they continue to abuse the judicial process, they could face further sanction pursuant to 28 U.S.C. § 1927.

▉ Moreover, plaintiffs argue that defense attorneys are illegally attempting to depose them. That defendants are interested in deposing plaintiffs for the purpose of determining what of their property is available for satisfaction of the order entered against them is simply in keeping with the Federal Rules of Civil Procedure, which allow a judgment creditor—like defendants herein—to obtain discovery from any person, including the judgment debtor—like plaintiffs herein—in aid of the judgment or execution. F.R.Civ.P. 69(a). Defendants are free to employ every mean available to them under the law to obtain execution of the judgment in this case. Plaintiffs' requests for a protective order and for a temporary restraining order are therefore DENIED. Further, the method of payment by plaintiffs is something to be agreed upon between plaintiff and defendants; if plaintiffs would like to enter into a payment plan with defendants, they are to discuss that alternative with them rather

than ask the Court to order defendants to accept whichever payment plan plaintiffs think reasonable.

WHEREFORE, in view of the above, it is HEREBY ORDERED, ADJUDGED AND DECREED that costs be, and hereby are, taxed in favor of defendants in the amount of $1,130.01. Plaintiffs are ORDERED to satisfy forthwith the full amount herein taxed.

IT IS FURTHER ORDERED that our decision herein is the final determination, so far as this Court is concerned, regarding the taxation of costs; if plaintiffs disagree with our decision, they are to appeal to the First Circuit Court of Appeals for review hereof. Plaintiffs are *not* to file with this Court any further objections to or requests for review of the taxation of costs. A violation of this Order will be interpreted as a violation of the injunction against additional pleadings and will bear the imposition of a fine and/or imprisonment.

IT IS FURTHER ORDERED that if plaintiffs wish to file any future request for exemption from the injunction, they are to comply with the requirements set out above.

IT IS SO ORDERED.