GOODWALL CONSTRUCTION
COMPANY and Howard P.
Gooden, Plaintiffs,

v.

BEERS CONSTRUCTION COMPANY,
Defendant.

Civ. A. No. 1:79–CV–1774–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 2, 1992.

John L. Taylor, Jr., John Leslie Schaub, Vincent, Chorey, Taylor & Feil, Atlanta, GA, William E. Shull, Ned L. Conley, Anastassios Triantaphyllis, Gregory L. Maag, Butler & Binion, Houston, TX, for plaintiffs.

William Henry Boice, John S. Pratt, Kilpatrick & Cody, Atlanta, GA, for defendant.

## ORDER

FORRESTER, District Judge.

This matter is before the court on defendant Beers Construction Company's motion for holding the patent unenforceable; Beers' motion for judgment notwithstanding the verdict or a new trial on the jury verdict that the infringement was willful; Beers' motion for judgment notwithstanding the verdict or a new trial on the jury verdict that defendant literally infringed the patent; Beers' motion for judgment notwithstanding the verdict or a new trial on the jury verdict that plaintiffs are entitled to lost profits; plaintiff Goodwall Construction Company's motion to amend the judgment; plaintiffs' motion for award of attorney's fees; plaintiffs' motion for judgment notwithstanding the verdict or a new trial on infringement under the doctrine of equivalents; and defendant's motion for a review of the taxing of costs.

## I. BACKGROUND

### A. *The Invention*

Goodwall, Inc., is the holder of U.S. Patent No. 4,149,513 (the patent), entitled "Method of Texturing Concrete with Deep Texture Hammer," issued on April 17, 1979. Said patent was reissued on November 25, 1986, under Reissue Patent No. 32,292 (the reissue patent). The patent was originally issued to the inventor, Howard P. Gooden. The patent and reissue patent describe an apparatus and method which create a rich, three dimensional texture on concrete surfaces. The texture created by the patented process substantially enhances the appearance of exposed concrete surfaces in buildings.

The benefits of the process generally include increased speed, less maintenance and breakdown of the equipment, and reduced gouging or chipping of the concrete. The process uses a pneumatically-powered hammer to which a blunt-ended accessory or rod is attached. This apparatus is then securely pressed against the concrete surface, where air pressure is used to cause the blunt-tipped rod repeatedly to impact the concrete surface resulting in the desired textured surface. While the apparatus is activated, the hammer is moved across the concrete surface in short strokes.

Claims one through five of the reissue patent, which are identical to claims one through five of the initial patent, form the basis of this dispute. The claims read:

1) A method of texturing a concrete surface comprising of the steps of:

A. securing a blunt-tipped mull point rod to a pneumatically-powered riveter;

B. placing the blunt tip of the blunt-tipped rod against the concrete surface to be textured;

C. applying pressure to the riveter such that the blunt tip of the blunt-tipped rod is securely forced against the concrete surface;

D. activating the riveter; and

E. after activating the riveter, moving the blunt-tipped rod in alternate strokes across the concrete surface while retaining pressure; and

F. removing the blunt tip from contact with the surface before the blunt tip gouges the surface, whereby the concrete surface is substantially roughened.

2) The method of claim 1 further includes the steps of:

G. deactivating the riveter; and

H. releasing pressure.

3) The method of claim 2 wherein step B includes moving the tip alternately up and down in short, substantially vertical strokes.

4) The method of claim 2 wherein step B includes moving the tip alternately back and forth in short, substantially horizontal strokes.

5) The method of claim [7] 1 wherein said steps of placing and pressure applying take place prior to said step of activating.

Reissue Patent at 6–7. Thus, claim one has six steps, and claims two through five are dependent claims including all the steps of claim one.

## B. *Procedural History*

Goodwall Construction Company originally filed this patent infringement suit, pursuant to 28 U.S.C. § 1338, against Beers Construction Company on September 21, 1979. A jury trial was conducted from November 7, 1990 to November 30, 1990.

## C. *Charge to the Jury*

In the charge to the jury the court first discussed the background of patent law in general. Trial Transcript at 1686–88. The court noted that only claims one through five of the reissue patent were being asserted in this case. Trial Transcript at 1688. The court stated that claims one through five of the reissue patent are identically worded to claims one through five of the original patent, but the court noted that there is a dispute as to the meaning of these claims which the jury must resolve. *Id.* The court stressed that only the claims of the patent can be infringed. *Id.* In order for the jury to find infringement, the jury must find that the defendant did every step in a claim. Trial Transcript at 1688–89. The court stated that each claim must be considered separately, because proof of infringement of any one claim would be sufficient to establish infringement of the patent. Trial Transcript at 1689. The Court further stated that the jury is to determine the meaning of the claims and the steps within them. *Id.* The jury was told first to look to the ordinary clear meaning of the words and then may also refer to or consider the specifications and drawings that are part of the patent together with the file history of the patent. *Id.* By determining what the words of the claims mean, the jury would be determining what is covered by the claim. *Id.*

After determining what the claims meant, the jury was directed that they must determine if the defendant literally infringed those claims. Trial Transcript at 1690. In order literally to infringe the claims, the jury was instructed that the defendant must practice every step of the claim. *Id.* The court further charged the jury that if they did not find literal infringement, then they must determine if there was infringement under the "doctrine of equivalents." *Id.* The Court then discussed the doctrine of equivalents. Trial Transcript at 1690–91.

Finally, the Court noted that if the jury found the reissue patent claims to be identical to the original patent, then the reissue patent shall constitute a continuation of the original patent, with the effect being that the reissue claims would relate back to the date

of the original patent. Trial Transcript at 1692. The Court stated that the claims are identical if they mean the same thing. *Id.* The Court then directed the jury to consider the issue of damages if the jury found that the defendant had infringed any of the claims under plaintiffs' patent, either literally or under the doctrine of equivalents. Trial Transcript at 1693.

Defendant Beers did not object to, nor does it now contest, any of the charge to the jury. Plaintiff Goodwall alleges that it objected to the charge to the jury and now seeks a judgment notwithstanding the verdict based upon that objection but only to the extent that the charge precluded the jury from finding infringement based upon the doctrine of equivalents if the jury found literal infringement of the claims. *See* Trial Transcript at 1598–1599.

### D. *Jury Verdict*

The jury found in answers to special interrogatories one through five that defendant Beers literally infringed claims one through five of the reissue patent. The jury was precluded from finding infringement under the doctrine of equivalents if it found literal infringement of the claim. In answer to special interrogatory six, the jury found that defendant Beers' infringement was willful. In answer to special interrogatory seven, the jury found that plaintiff Goodwall would have obtained the contract for texturing the Southern Bell Building in the absence of such infringement. As a result of defendant's infringement, the jury found in special interrogatory eight that plaintiffs were entitled to lost profits in the amount of $968,664. The jury did not answer special interrogatory nine, the amount of reasonable royalty plaintiff Goodwall should be awarded, because the jury found that the plaintiff was entitled to a greater reward under lost profits.

Judgment was entered by the court based upon the jury verdict in favor of the plaintiffs in the amount of $968,664 with interest at the rate of 7.2% per annum as provided by law and their costs of action on December 4, 1990. Both parties contest various components of the judgment entered and have filed appropriate motions seeking judgments not-

withstanding the verdict regarding these issues.

## II. DISCUSSION

Defendant Beers requests that a JNOV be entered on the issues of literal infringement, willfulness and lost profits. Further, Beers has moved to have the patent held unenforceable and invalid. In addition, Beers requests a review of plaintiffs' taxing of costs. Plaintiffs seek a JNOV on the issue of infringement under the doctrine of equivalents. Further, plaintiffs seek to amend the judgment of the jury to include increased damages based upon a finding of willful infringement and prejudgment interest in order to be made completely whole. In addition, plaintiffs seek attorney's fees and costs.

### A. *JNOV Motions*

The standard of review for a judgment notwithstanding the verdict under Fed. R.Civ.P. 50(b) requires that:

> [a] trial judge presented with a motion for JNOV (1) must consider all the evidence in a light most favorable to the non-mover, (2) must not determine credibility of witnesses, and (3) must not substitute his or her choice for the jury's in finding facts, drawing inferences, or deciding between conflicting elements in the evidence.

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1571 (Fed.Cir.1986) (quoting *DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 425 (Fed.Cir.1986)).

In order for the court to support a JNOV motion:

> [The movant] must show (1) that the jury's presumed or expressed findings are not supported by substantial evidence or, (2) if the jury's findings were supported by substantial evidence, that the legal conclusions implied from the verdict cannot be supported by those findings.

*Dataline Corp. v. Micro Technologies, Inc.,* 813 F.2d 1196, 1200 (Fed.Cir.1987) (citing *Perkin–Elmer Corp. v. Computer Vision Corp.,* 732 F.2d 888, 893 (Fed.Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984)); *see also Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1512

(Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). " 'Substantial evidence' is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 631 (Fed.Cir.1987) (citing *Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893 (Fed.Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984)). "The law presumes the jury made the findings necessary to support its verdict, and that the required findings are controlled by the court's instructions to the jury." *DMI,* 802 F.2d at 425 (citing *Perkin–Elmer,* 732 F.2d at 893).

### 1. Infringement

An analysis of patent infringement involves a two-step process. "First, a claim is construed without regard to the accused product. [Cit.] Second, the claim is compared with the accused product, to determine whether all of the limitations of the claim are present either exactly or by a substantial equivalent. [Cits.]" *Jurgens v. McKasy,* 927 F.2d 1552, 1560 (Fed.Cir.1991); *see also Vaupel Textilmaschinen v. Meccanica Euro Italia,* 944 F.2d 870, 879 (Fed.Cir.1991); *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1578 (Fed.Cir.1988); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481–82 (Fed.Cir.1984). "This analytical framework applies whether claims are asserted to be infringed literally or by application of the doctrine of equivalents." *Texas Instruments v. U.S. Intern. Trade Com'n,* 805 F.2d 1558, 1562 (Fed.Cir.1986); *see also Vaupel,* 944 F.2d at 879.

■ Claim interpretation is a question of law based upon underlying facts. *Intel Corp. v. U.S. Intern. Trade Com'n,* 946 F.2d 821, 835 (Fed Cir.1991); *Tol–O–Matic v. Proma Produkt–Und Marketing,* 945 F.2d 1546, 1549 (Fed.Cir.1991); *Hormone Research Found., Inc. v. Genetech, Inc.,* 904 F.2d 1558, 1562 (Fed.Cir.1990). "The claims are to be interpreted in light of the claim language, the specification, and the prosecution history." *Intel,* 946 F.2d at 835; *Stiftung v. Renishaw, PLC,* 945 F.2d 1173, 1177 (Fed.Cir.1991); *SRI International v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1121 (Fed.Cir.1985). In addition, expert testimony may be relied upon. *Fonar,* 821 F.2d at 631 (citing *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656 (Fed.Cir.1986); *McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 675–76 (Fed. Cir.1984)). "When the meaning of a term in a patent claim is unclear, subject to varying interpretations, or ambiguous, the jury may interpret the term en route to deciding the issue of infringement." *Tol–O–Matic,* 945 F.2d at 1550. However, any interpretation conflict as to the meaning of a claim's terms must be based upon a material evidentiary dispute, not mere conclusive opinions as to the term's meaning which attempt to create a conflict. *Johnston v. Ivac Corp.,* 885 F.2d 1574, 1579–80 (Fed.Cir.1989).

■ Infringement occurs "only if 'every limitation set forth in a claim [is] found in an accused product or process exactly or by a substantial equivalent.' " *Jurgens,* 927 F.2d at 1560 (citing *Ivac,* 885 F.2d at 1577). It is an issue of fact whether "the properly construed claims encompass or 'read on' the accused device." *Vaupel,* 944 F.2d at 879; *ZMI,* 844 F.2d at 1578. "Literal infringement requires that the accused device embody every element of the claim as properly interpreted." *Texas Instruments,* 805 F.2d at 1562. Infringement under the doctrine of equivalents requires a showing that "the accused device performs substantially the same function, in substantially the same way to achieve substantially the same result as the claimed device." *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1325 (Fed.Cir. 1991) (citing *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)). Equivalence is determined at the time infringement takes place, not at the time the patent is applied for. *Texas Instruments,* 805 at 1563. "[T]he determination of equivalency is not subject to ... a rigid formula. An equivalent must be found for every limitation of the claim somewhere in an accused device, but not necessarily in a corresponding component...." *Intel,* 946 F.2d at 832 (quoting *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 1259 (Fed.Cir. 1989)).

### a. *Literal Infringement*

Defendant Beers' central argument is that it did not literally infringe claims one through five of the reissue patent because it did not use the exact required components spelled out in the claims. Specifically, Beers argues that literal infringement cannot be found because Beers did not use a "riveter," a "blunt-tipped moil point rod," or the "secured forced pressure" process as spelled out in the claims. Instead, Beers used a "chipping hammer," a "chisel blank," and a "firm pressure" process which Beers argues represented well-known prior art. In addition, Beers argues that it is not possible to interpret the reissue patent claims in a manner which would allow those claims to date back to the issue date of the original patent.

Thus, there is a dispute as to the correct interpretation of certain elements of the claims. This interpretation issue, as to the proper meaning of various claim terms, is the result of a "genuine evidentiary dispute" supported by record evidence on both sides, not mere accusations, which thereby creates a factual issue to be resolved by the jury. *See Tol–O–Matic,* 945 F.2d at 1550; *Ivac,* 885 F.2d at 1579–80. The jury was charged to consider these factors, presumptively did so, and found that the proper interpretation of the claims when applied to the accused device and process represented a literal infringement on the reissue patent. Beers now argues that the record evidence cannot support such findings. Therefore, the court must determine if there was substantial evidence within the record to support the jury's factual finding as to the proper interpretation of the claim terms in dispute, as well as the jury's finding that the properly interpreted claims "read on" the accused device.

### (i) The Riveter

■ Beers argues that the term "riveter" contained in claims 1 through 5, if correctly interpreted, can refer only to one type of pneumatic jackhammer, a riveter, which does not encompass the pneumatic "chipping hammer" used by Beers and thus precludes literal infringement by Beers. Both parties refer to a definition contained within the patent specification to support their position regarding the correct interpretation of riveter as contained within the claims. The patent specification states that:

> Jackhammer 11 may be an Ingersoll–Rand Model 4A Riveting Hammer or other similar pneumatic device typically used in the prior art for riveting steel planks together. In the prior art, however, the one and one-half inch piston and the blunt-ended mull point are not used and the riveter is not used for rough-texturing concrete. In addition, high pressure greater than 100 p.s.i.g. and preferably about 130 p.s.i.g. is not used in conjunction with the Model 4A Riveting Hammer.

Reissue Patent, Col. 4, lines 41–49.

Goodwall argues that "riveter" should be interpreted to include an Ingersoll–Rand Model 4A Riveting Hammer or any other pneumatically-powered jackhammer which produces substantially the same high power strokes at substantially the same frequency. Plaintiffs' Response Brief at 12–13. Beers, however, argues that the correct interpretation of "riveter" only includes an Ingersoll–Rand Model 4A Riveting Hammer, while the term "jackhammer" under the patent is given a broader definition than the term "riveter," including other similar pneumatic devices typically used to produce substantially the same effect. Defendant's Reply Brief at 5–6. Thus, the term "riveter" is limited in such a way as to preclude literal infringement by Beers' use of a "chipping hammer" in its alleged infringing process.

Beers' interpretation, though plausible, is contradicted by other language contained within the patent specification. The section of the patent specification containing the aforementioned definition states in the first paragraph:

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

As shown in FIG. 1, the preferred embodiment of the apparatus of the invention is a pneumatically-powered jackhammer 11 adapted to hold a moil point 13 by securing means 15.

Reissue Patent, Col. 3, lines 3–9. The specification clearly states that it is a "jackhammer" that is the preferred embodiment of the

apparatus. Therefore, the term "jackhammer," which is defined broadly to include other similar pneumatic devices, could be interpreted to be the same as the term "riveter" specifically used in the claims. This interpretation was further supported by the expert testimony presented at trial, as well as the various exhibits and tapes regarding the accused process shown at trial.

Such a holding is supported by past Federal Circuit precedent. In *Vaupel* the court found that claims language which referred to a "breast beam" and "breast plate" did not require that this specific part be contained in the accused device to make out a literal infringement finding. *Vaupel*, 944 F.2d at 879–80. Rather, "after reviewing the claims, the specification and drawings, the prosecution history, and the expert testimony," the court found the claim interpretation to be correct. Comparing this decision to the case *sub judice*, the record evidence could easily support an interpretation of the Gooden claim limitations which would permit a finding of infringement. In such an interpretation the term riveter is not a limitation which requires a specific part to be used in the infringing process. Instead, riveter could be found to include any pneumatically-powered jackhammer which could be adapted to hold a blunt-ended metal device, which in turn could be securely forced against a concrete surface and repeatedly impacted against the surface to achieve the desired textured results. This analysis would include Beers' chipping hammer.

In addition, in *Amstar* the court noted that "the law recognizes the irrelevance of apparatus distinctions in determining infringement of process claims." *Amstar*, 730 F.2d at 1482 (citing *International Glass Co. v. United States*, 187 Ct.Cl. 376, 408 F.2d 395, 400 (1969)). Thereafter, the court reversed the trial court and held that the accused product could not be found non-infringing because of a substituted part or irrelevant additions or omissions of features, where the infringing device has adopted the basic features of the patent. *Amstar*, 730 F.2d at 1482 ("[n]or could substitution of a rotating disk for the baffle of claim 9 escape infringement, the two being equivalent").

Further, in *Fonar* the court has held that no infringement occurs where no substantial evidence supports the jury's interpretation of the claim terms. *Fonar*, 821 F.2d at 632–33. Key to this decision was the fact that the patent holder made no argument that the patent specification, other claims, or prosecution history supported its interpretation and theory of infringement. *See id.* Here, there was substantial evidence to support such an interpretation specifically contained in the aforementioned types of evidence. This interpretation was then further supported by expert testimony and demonstrative evidence actually depicting the processes used.

The law recognizes that the patent specification only describes the "best mode" known to the inventor at the time the patent is applied for, not "every conceivable and possible future embodiment of his invention." *SRI*, 775 F.2d at 1118 (citing 35 U.S.C. § 112). "[I]t is not necessary to embrace in the claims or describe in the specifications all possible forms in which the claimed principle may be reduced in practice." *Smith v. Snow*, 294 U.S. 1, 11, 55 S.Ct. 279, 283, 79 L.Ed. 721 (1935). To require otherwise and "permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." *Graver*, 339 U.S. at 607, 70 S.Ct. at 856.

Thus, there was substantial evidence to support the jury's findings that the patent claims interpretation of the term "riveter" could include such other pneumatic powered devices as Beers' "chipping hammer." Once this interpretation is justified, the evidence presented at trial overwhelmingly supports a finding of literal infringement.

(ii) Blunt–Tipped Moil Point Rod

▪ A similar response can be made to Beers' argument that Beers' use of a "chisel blank" cannot literally infringe the claims of the patent which require a "blunt-tipped moil point rod." Beers argues that the claims limit the patent in such a way that only by the use of a "blunt-tipped moil point rod" can the patent be literally infringed. Defendant's Reply Brief at 8–11. Goodwall argues that the correct interpretation of "moil point" should include any blunt-tipped rod which

performs essentially the same function. Plaintiffs' Response Brief at 20–21. The jury clearly agreed with Goodwall's broader interpretation of the claims.

This broader interpretation is again supported and entirely reasonable based upon the appropriate definition contained within the patent specifications. The patent specifications state:

Moil point 13 is an elongated piece of solid steel having tapered end 49 of circular cross section with blunt tip 50, middle section 51 of square cross section and cylindrical [blund] *blunt* end 53 having blunt tip 54. The diagonal of the cross section of middle section 51 is equal to the diameter of the circular cross section of tapered end 49 at point 57 where tapered end 49 and middle section 51 join, thus forming four shoulders 55 facing toward middle section 51 at point 57. The diameter of blunt end 53 is approximately equal to the diameter of the square cross section of middle section 51.

Reissue Patent, Col. 3, lines 32–42. Thus, it is entirely plausible to interpret "moil point" as encompassing any blunt-tipped rod with a cross section at the blunt end approximately equal to the diameter of the middle section. Beers' "chisel blank" would fit such an interpretation. Furthermore, the additional expert and demonstrative evidence presented at trial would support such a conclusion. Therefore, for the same reasons as previously discussed, a finding of literal infringement is supported.

### (iii) Securely Forced Pressure

■ With regard to Beers' argument that it merely practiced the method of "firmly" holding the surfacing tool against the concrete rather than the "securely forced" practice protected under the patent, Beers has not met its heavy burden of showing that there is not substantial evidence to support the jury findings.

Again, Beers' fundamental argument is based on the idea that Beers could not have literally infringed upon the patent and performed Goodwall's "securely forced" step because the equipment that Beers used was not identical to that described in Goodwall's pat-

ent. As this court has already shown, identical equipment is not required under patent law in order to make out a claim for literal infringement. *Amstar*, 730 F.2d at 1482.

Beers further argues that the "securely forced" step is nothing more than the "firm pressure" used to operate a pneumatic hammer under prior art. The term "securely forced" was not directly defined in the patent specification and does not appear anywhere in said specification except for the claims. Beers argues that Goodwall has consistently defined the term "securely forced" "in terms of the desirable results to be achieved and undesirable results avoided as the blunt-tipped moil point rod moves axially within the servicing device." Defendant's Reply Brief at 12. Thus, Beers argues that its "firm pressure" process, which never achieved the claimed results in Goodwall's patent and which really represents nothing more than existing prior art, could not have literally infringed Goodwall's patent.

Beers' argument, however, mistakenly ignores the fact that the validity of the patent has already been upheld and agreed to by the parties. At the time the patent was reissued, the securely forced pressure process was novel and not precluded by prior art, at least in the context of texturing concrete. The real issue is whether there has been infringement when the claims are read as a whole, *SRI*, 775 F.2d at 1121, and the record evidence used to support interpretation of the claims is taken as a whole, *Fonar*, 821 F.2d at 631. In short, was there sufficient evidence presented to support a finding that the "firm" pressure process used by Beers was the same as the Gooden patent's "securely forced" process. Notwithstanding the fact that Beers never achieved the precise results claimed, there clearly was substantial evidence presented which would support a finding that Beers' process infringed upon the Gooden patent. *See Amstar*, 730 F.2d at 1482 (citing *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 402 (10th Cir.1965), *cert. denied*, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966) ("infringement cannot be avoided by the mere fact that the accused device is more or less efficient")). The trial expert testimony and the videotape

of the process used by Beers at the Southern Bell Building showed that Beers was practicing the securely forced pressure process contained in the patent.

Thus, because substantial evidence supported the jury verdict that every properly interpreted claim limitation "read on" the accused process, defendant Beers Construction Company's motion for judgment notwithstanding the verdict or new trial on the jury verdict finding literal infringement is DENIED.

### b. *Infringement Under the Doctrine of Equivalents*

■ As previously discussed, infringement under the doctrine of equivalents requires a showing that "the accused device performs substantially the same function, in substantially the same way to achieve substantially the same result as the claimed device." *Malta*, 952 F.2d at 1325 (citing *Graver*, 339 U.S. at 608, 856); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35 (Fed. Cir.1987) (*en banc*), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

Plaintiffs seek a judgment notwithstanding the verdict regarding the issue of infringement under the doctrine of equivalents. Goodwall argues that the special interrogatories and accompanying instructions given to the jury did not permit a finding of infringement under the doctrine of equivalents once the jury found literal infringement.[1] Further, Goodwall argues that given the jury finding of literal infringement, a finding of infringement under the doctrine of equivalents is mandated by the record evidence.

Defendant argues that plaintiffs are barred from seeking a judgment notwithstanding the verdict on the issue of infringement under the doctrine of equivalents because plaintiffs never properly objected to the court's charge to the jury prior to the jury retiring to consider its verdict as required by Fed. R.Civ.P. 50 and 51. Further, Beers argues that even should it be determined that Goodwall properly objected, a JNOV finding would still be precluded because a reasonable jury could have found that Beers had not infringed the Gooden patent under the doctrine of equivalents. The court disagrees.

First, the court finds that the clear and precise meaning of the charge and accompanying instructions to the jury precluded any possibility of the jury finding infringement under the doctrine of equivalents once the jury had reached a finding of literal infringement. If the jury marked yes in any literal infringement box, it had to mark no in the accompanying infringement box under the doctrine of the equivalents. It is presumed the jury properly carried out the court's instructions. *DMI*, 802 F.2d at 425. Therefore, the jury verdict expresses no opinion as to Beers' potential infringement of the Gooden patent under the doctrine of equivalents.

Second, the court finds that no reasonable jury which on the facts present found literal infringement could have found that Beers did not infringe based on the doctrine of equivalents.[2] However, the court agrees with Beers that this outcome is not necessarily the mandated result in all cases. Nonetheless, the court finds that Beers' texturing process includes an equivalent step for each step in the claims, and "the accused device performs substantially the same function, in substantially the same way to achieve substantially the same result as the claimed device."

---

1. Plaintiffs originally alleged that the court's jury instructions were erroneous but subsequently amended their position, concluding that the court's instructions on the infringement issue were proper.

2. Beers' citation to *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534 (Fed.Cir.1991), does nothing to change this opinion. Beers' analysis of the difference between a hanger shank and a hanger hook is misplaced. In *London* both processes were created to permit a clamping assembly for use in garment hanging bags. The district court correctly found that one process provided a clamping assembly for a hanger shank and one for a hanger hook. Here, both processes relate to a method of texturing concrete. Thus, the processes in *London* produced separate functions, and in the case *sub judice*, the processes merely use different parts to produce the same function. For the aforementioned reasons the jury and the court in this case found that the Gooden claims as appropriately interpreted had been infringed. Further, important to the *London* decision was the court's finding that there was no corresponding infringement of the "tight seal" element of the patented devise. Here, all claims have been infringed.

Nothing contained in the file wrapper or the existing prior art changes that conclusion. In fact, the opposite is true. Beers has already alleged that the key to the reissue patent was the new securely forced pressure process.[3] The other components, Beers argues, already existed. The same is true for Beers' equivalent equipment that it used in its process. Thus, given the validity of the patent, nothing in the file history would limit Goodwall's patent to using a riveter and a blunt-tipped moil point rod, since the other equipment is merely equivalent thereof, and not the material component of the reissue patent. No reasonable interpretation of the claims and subsequent comparison of the patented claims to the accused process would result in a finding that all the limitations contained in the claims were not present in Beers' process by means of substantially equivalent steps. At a minimum a finding of infringement under the doctrine of equivalents is warranted, given Beers' equivalent use of each claim of Gooden's patent to achieve substantially the same results.

■ Third, although the court agrees that plaintiffs did not properly object to the court's charge to the jury regarding the special interrogatories, the plaintiffs did properly raise the issue of inconsistent findings if the jury was required to mark "no" in the infringement box under the doctrine of equivalents once literal infringement was found. Now, plaintiffs seek a JNOV on this issue in order to prevent potentially inconsistent findings should the case be appealed and the Federal Circuit reverses the jury verdict and this court's holding based on literal infringement.

Notwithstanding Beers' argument to the contrary, the court finds that "great injustice would result" if Goodwall's JNOV motion were not granted. *See Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604, 615 (Fed.Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984). Given the court's finding that infringement under the doctrine of equivalents has occurred, should plaintiffs' JNOV motion be denied, then the plaintiffs might be forced

to suffer through a new trial should the literal infringement finding be reversed, only to have a subsequent judgment rendered under the doctrine of equivalents. The interests of justice are better served by having all issues ruled on and thereby ready for appeal should one or both of the parties decide that appeal is appropriate. This case is already twelve years old, and no one wants to see it continue any longer than absolutely necessary to see justice served.

### 2. Other JNOV Motions

Defendant Beers also has outstanding two other motions for judgment notwithstanding the verdict or new trial based on the jury verdict regarding the issues of willfulness and lost profits. Having thoroughly reviewed the record evidence, the court finds that these motions are without merit. Substantial evidence was presented regarding these issues at trial, and it is presumed that the jury considered such evidence in its findings. Thus, defendant's motions for judgment notwithstanding the verdict or new trial based on the jury verdict regarding the issues of willfulness and lost profits are hereby DENIED.

### B. *Other Motions*

In addition to the JNOV motions previously discussed, the defendant seeks to hold the patent unenforceable based on comments made by plaintiffs' counsel in closing arguments during the trial. Plaintiffs seek an amended judgment which includes increased damages and prejudgment interest. In addition, plaintiffs seek attorney's fees and costs. Defendant requests a review of plaintiffs' taxing of costs.

### 1. Defendant's Motion to Hold the Patent Unenforceable.

Beers seeks to have the court, *sua sponte,* issue a holding that the Gooden patent is unenforceable because of Mr. Conley's, plaintiffs' counsel, *in judicio* admission during closing arguments in the jury trial that the "securely forced" pressure process described in the patent claims is the same pressure as described in prior art concerning pneumatic

---

3. Goodwall argues that it was the process as a whole in the context of texturing concrete which

was patentable, not merely the securely forced step.

hammers. The "securely forced" pressure was the only component of the patented process which was alleged to be "entirely new" or "substantially different" during the reissue proceedings before the PTO. Defendant argues that this admission renders plaintiffs' prior statements to the PTO false and shows that plaintiffs either intentionally deceived or indirectly deceived the PTO through their gross negligence in reviewing applicable prior art. As a result of this inequitable conduct, defendant argues that the court should refuse to enforce the patent.

Further, concerning the merits of the patent application, Beers argues that if Gooden's "securely forced" pressure is the same as "firm" pressure contained in prior art, then the patent would be invalid because all of the elements of the patented process would be obvious. 35 U.S.C. § 103; *Graham v. Deere,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). Plaintiff argues that even assuming that all the elements of the Gooden patent existed in similar prior art, the process as a whole as applied to texturing concrete would still be innovative and not obvious.

 The court finds that, notwithstanding Beers' claims to the contrary, Beers seeks to have the court re-open the issue of invalidity of the patent. This request comes after attempting to invalidate the patent before the PTO office for five and a half years, after losing on the issue of invalidity at the summary judgment stage of this case, after signing a consent order precluding Beers from contesting the validity of the patent in question, and after a jury found Beers had literally infringed the patent. Nor, contrary to defendant's assertions, was the court inclined to hold the patent invalid.[4] First, the court notes that Beers' claims concerning invalidity are moot, as Beers is bound by the consent order between the parties accepting the reissue proceedings. However, even assuming that Beers may raise the invalidity issue because of changed facts in the case, or the court has a duty to raise the issue *sua sponte,* the court finds that Beers' claims are without merit.

Although Beers' invalidity claims are colorable at first glance, Beers' arguments neglect to account for changes in knowledge and hindsight which result from the passage of time. Beers seeks to apply the knowledge of the parties today, to the patent reissue process conducted years in the past. To allege that Goodwall had a duty to disclose the similarity between the prior art's "firm" pressure and Gooden's "securely forced" pressure, which it apparently now admits, misses the point. At the time the patent was reissued, Gooden did not have that knowledge, nor did it believe that these two types of pressure were the same. At the time the patent was reissued, the process was not obvious. That was the finding of the PTO and the court, and nothing in plaintiffs' closing arguments changes these findings.

Further, Beers had the same knowledge of alleged existing prior art as did Goodwall at the time the patent was reissued.[5] As defendant correctly pointed out, the court in a prior order precluded defendant from raising any defense "on the basis of evidence of allegedly inequitable conduct during the reissue proceedings which was actually presented during the proceedings or *which could have been presented during the proceedings.*" Furthermore, defendant has admitted that it had knowledge of what the Ingersoll–Rand instructions (the prior art) said. However, defendant was "shocked" to hear plaintiffs' admission during trial that the pressure re-

4. The fact that the court stated that it did not think that it would have issued the patent after hearing the evidence in the case is irrelevant. As will be discussed *infra,* the key is the knowledge of the parties at the time the patent was reissued, not at the conclusion of trial.

5. Specifically, the court is referring to the Ingersoll–Rand brochure instructions which discuss the "firm" pressure process, which allegedly represents obvious prior art of Gooden's "securely forced" pressure process.

Plaintiffs contend that the only Ingersoll–Rand brochure submitted to the PTO by Gooden and of which Gooden had knowledge was the riveter brochure. This brochure does not discuss the "firm" pressure process. Only the chipping hammer brochure, which was not submitted to the PTO, discusses the "firm" pressure process. Therefore, it appears that Gooden did not deceive the PTO during the reissue proceedings even accepting plaintiffs' counsel's comments as an admission of the similarity in the two secure force steps.

quired during the "securely forced" step was the same as the prior art "firm" pressure step. Yet, defendant could have presented evidence of the Ingersoll–Rand "firm" pressure step just as easily as could have Gooden if it believed that such a process was the equivalent of obvious prior art. Therefore, the court finds that defendant is precluded from raising this alleged inequitable conduct claim because defendant could have raised this claim in a prior proceeding.

Defendant's motion for holding the patent unenforceable is DENIED.

### 2. Plaintiffs' Motion to Amend the Judgment

Plaintiffs seek to amend the judgment entered in the case *sub judice,* seeking increased damages and prejudgment interest. Defendant contests modification of the judgment on both grounds.

#### a. *Increased Damages*

■ Pursuant to 35 U.S.C. § 284, a court "may increase the damages up to three times the amount found or assessed." Whether or not to award increased damages is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Acoustical Design v. Control Electronics Co.,* 932 F.2d 939, 942 (Fed.Cir.1991) (citing *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1547–48 (Fed.Cir. 1984)). The exercise of the court's discretion should be "informed by the Court's familiarity with the matter in litigation and the interest of justice." *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1329 (Fed.Cir.1987) (quoting *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201 (Fed.Cir.1986)).

"A finding of willfulness, though a *sufficient* basis for awards of enhanced damages, does not *compel* such an award." *State Industries, Inc. v. MOR–FLO Industries, Inc.,* 948 F.2d 1573, 1576 (Fed.Cir.1991) (emphasis in original) (citing *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 542–43 (Fed.Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991)). The proper two-step analysis to apply when determining whether to award increased damages requires the district court to "determine

whether willful infringement (or another circumstance justifying an enhanced award) is proven," and then, if willfulness or other justification is found, the court must "determine whether or not, under the totality of the circumstances, increased damages are warranted." *Id.; see also Jurgens,* 927 F.2d at 1562 (applying the totality of the circumstances test).

■ In the case *sub judice,* the jury verdict included a finding of willfulness. The court finds that the jury finding of willfulness was reasonable and supportable based upon the record evidence presented. Therefore, the court must determine, under the totality of the circumstances, whether an award of increased damages is warranted. The court finds that under the circumstances present a tripling of the jury's lost profits judgment is warranted.

Material evidence at trial was presented which showed that Beers willfully copied Goodwall's patented process. Evidence showed that Beers attempted to conceal material information from it patent attorney, Mr. Henry, during his investigation into his opinion on infringement of the patent in question. Further, there were questions raised about the unexplained loss of important evidence. These factors, taken along with the jury finding of willfulness, compel a finding of increased damages in order to punish the defendant for its actions and in order to deter such conduct in the future.

This position is fully consistent with other district courts' awarding of triple damages where willful infringement has been proven and their subsequent affirmation by the circuit court. *Acoustical Design,* 932 F.2d at 942 (similar facts, willful infringement found, treble damages); *S.C. Johnson & Son,* 781 F.2d at 202 (vacated and remanded where willful infringement found and decision refused to award increased damages); *Rosemount,* 727 F.2d at 1547–48 (willful infringement found, treble damages); *Leinoff v. Louis Milona Sons, Inc.,* 726 F.2d 734, 742–43 (Fed.Cir.1984) (willful infringement found, treble damages); *Lam, Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1068–69 (Fed.Cir. 1983) (willful infringement found, treble damages).

### b. Prejudgment Interest

The trial court is afforded wide latitude in determining the rate of prejudgment interest to be taxed. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 939 F.2d 1540, 1545 (Fed.Cir.1991); *Studiengesellschaft Kohle, M.B.H. v. Dart Industries*, 862 F.2d 1564, 1580 (Fed.Cir.1988); *Bio–Rad Laboratories v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed.Cir.1986). The court's discretion also extends to whether the interest rate taxed should be compounded or simple interest. *Bio–Rad*, 807 F.2d at 969. Any compounding of interest may apply to both pre- and post-judgment interest. *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 791 (Fed.Cir.1990). Also, the court has discretion to determine the frequency with which any compounding will take place. *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir.1989) (daily, monthly, quarterly or annually compounding is permissible). In addition, the court "may award interest at or above the prime rate." *Uniroyal*, 939 F.2d at 1545. Further, there is no "rule" which requires proof of borrowing at or above the prime rate for a party to be entitled to interest at that rate. *Studiengesellschaft*, 862 F.2d at 1579–80. Any award of prejudgment interest should generally cover the time period from the beginning of the infringement to the date of the judgment. *General Motors Corp. v. Devex*, 461 U.S. 648, 655, 103 S.Ct. 2058, 2062, 76 L.Ed.2d 211 (1983); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed.Cir.1988); *Bio–Rad*, 807 F.2d at 969. However, any prejudgment interest award is applied only to the actual damages award, not to the punitive or enhanced portion of the award. *Beatrice Foods v. New England Printing*, 923 F.2d 1576, 1580 (Fed.Cir.1991) (quoting *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389 (Fed.Cir.1983)).

When exercising this discretion, the court must promote the "purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio–Rad*, 807 F.2d at 969 (quoting *Devex*, 461 U.S. at 655, 103 S.Ct. at 2062). Further, "the merits of the infringer's challenges to the patent are immaterial," because the purpose of such interest is to "adequately compensate" the patent holder for the forgone use of the money it was entitled to. *Bio–Rad*, 807 F.2d at 969.

Here, the court finds that prejudgment interest is appropriate to place Goodwall in as good a position as it would have been in absent the infringement. The court holds that Goodwall should be awarded interest at the prime rate[6] plus two percent compounded annually from the point Beers began working on the Southern Bell project, the point when the infringement began, up to the date the judgment was entered, December 4, 1990. Further, post-judgment interest should also be at the prime plus two percent rate compounded annually. This prejudgment interest applies only to the jury award for lost profits, not for any increased damages awarded by the court. This interest rate should "adequately compensate" Goodwall.

The court believes that this rate is appropriate because Goodwall was a construction company which by its very nature often incurs capital shortages which are covered by loans from financial institutions. The prime plus two percent rate represents the rate which Goodwall would have had to pay in order to obtain short term coverage loans, as well as compensating Goodwall for any investment income which it would have received. *See Uniroyal*, 939 F.2d at 1545. Further, this litigation was "protracted and comprehensive" which warrants an interest rate compatible to business rates rather than statutory rates. *See id.*

### 3. Plaintiffs' Motion for Attorney's Fees

There is just no accounting for what lawyers may do. The more humble of our countrymen are literalists. They interpret the law with the cold precision of a logician. They are the ones who read instructions and grow worn and weary trying to locate slot B so that it may receive tab A. Holmes was right when he said that the way of the law is

---

6. At the appropriate rate for each year that prejudgment interest is provided.

not logic. Lawyers are not logical; they are right-brained people who trade much on feeling and instinct and emotion and on trained intuition. You can recognize them in their early teens. They are the ones who do not read the instruction booklets.

This court instructed plaintiffs' counsel that it would decide the application for attorney's fees with reference to the principles set out in *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988). It would seem logical that the court would apply the controlling attorney's fees law in the circuit in which it sits if for no other reason than because it contains familiar standards and methods. It would have seemed that in this case it would be even more logical to assume that the court would follow the prescription of that case, as it authored it. That logic did not prevail, and the fee applications which the court has gives only over-the-shoulder glances at the methodology which the court announced that it would follow.

*Norman* teaches that in setting the hourly rate, evidence must be presented of a market rate set with reference to similar cases, clients and attorneys. *Norman* teaches that to account for the time value of money, it is the rates prevailing at about the time the award is made that will control. Fee applicants here have given the court self-serving statements about current rates for only a few of the lawyers who worked on the case, survey data for 1989, and have suggested the application of some interest rate to adjust for the time value of money. The evidence presented on the hourly rate is inadequate.

This case involves a patent on a method of texturing concrete. There are no difficult concepts of an arcane science: the method must necessarily be simple enough that it may be taught by a construction foreman to an ordinary construction laborer. The case went through a reissue proceeding and a trial of about three weeks. According to the materials contained in the affidavits of Messrs. Conley, Shull and Taylor, fifteen or twenty lawyers spent, through the application for attorney's fees, in excess of 6,100 hours on the case. That figure so strains the credulity of the court that it is unwilling to accord plaintiffs' counsel the usual presumption either that the hours were actually worked or that they were reasonably necessary. There is no persuasive evidence in the record showing that this amount of time was reasonably necessary for the prosecution of this case. Accordingly, the fee application is deficient in this respect also.

Because the fee application is deficient in establishing both a reasonable hourly rate and the hours reasonably expended, the court must reach those two figures exercising its own expertise.

■ Two groups of lawyers (several law firms) have worked on this case—the Texas group and the Georgia group. David M. Ostfeld has been a member of the patent bar since 1974 and has been a partner in several intellectual property firms. Ned L. Conley has been in intellectual property law for close to fifty years, and he is a partner in a major Houston firm. William E. Shull was admitted to practice in 1977 and is now a partner of Mr. Conley. A number of associates from Texas law firms worked on the case, including Eric Mirabel, Donald Verplanken, Sam Listiak and Russ Weaver. These associates generally had evidence of high legal academic attainment in their background and had two to eight years' experience at the time they performed work on the case.

In Georgia, John L. Taylor, Jr., a partner in the firm of Vincent, Chorey, Taylor and Feil, served as lead local counsel. His partners, Mr. Feil and Ms. McCullough, spent some time in the case, as did Associates Schaub, Dye, Johnson, Hankins and others. As with the Texas lawyers, the associates had about two to ten years' experience and evidence of the attainment of high legal academic honors.

To establish the reasonable hourly rates which appear hereafter, the court relied to a very limited extent on recent billing rates and to a large extent on the survey data supplied in counsel's affidavits. Since the survey data is several years old, the court followed the practice of increasing rates by about twenty dollars per hour to reflect present rates. In the case of Mr. Ostfeld, the court assigned a lower rate, as it agreed with Beers that in a number of particulars, Mr.

Ostfeld did not in this case show the skill necessary to command a rate toward the upper end of the range.

Set out below is a table which the court constructed wherein it endeavors to allocate the hours allegedly spent between various stages of the matter. The chart was compiled from the characterizations contained in the affidavits of Conley, Shull and Taylor.

ALLOCATION OF HOURS CLAIMED
BY ACTIVITY

| | |
|---|---|
| Preliminary Matters, Legal Research, and Proceedings before the Patent and Trademark Office | 1,388 |
| Discovery | 856.36 |
| Motions | 393.20 |
| Unsuccessful Motions | 72.5 |
| Administrative and Conferences | 523.15 |
| Trial Preparation and Pretrial Order | 2,243.20 |
| Trial | 567 |
| Post–Trial | 459 |
| TOTAL | 6,109.61 |

In reaching its figure as to the hours reasonably expended, the court awarded no fees for 72.5 hours which it identified with unsuccessful motions made by plaintiffs. Further, it deducted 137 hours from the time claimed by associate Mirabel for work in reorganizing the file after proceedings before the patent office. Also, it disallowed 1,918 hours in trial preparation by the Texas lawyers. It left 246 hours for this task which are included in Mr. Conley's totals and billed at his rates. Given the nature of the evidence at trial, the complexity of the legal and factual issues, the fact that invalidity was not before the jury, and the fact that Mr. Taylor participated extensively in the trial with less than 100 hours of trial preparation, the court views the amount of time claimed for this activity as excessive and verging on unbelievable.

As seen above, counsel for the plaintiff devoted in excess of 850 hours to discovery. Mr. Taylor's firm shows that it spent 236.3 hours of the total hours spent on discovery. It seems to the court that the Texas lawyers handled the pretrial preparation of this case. There is no explanation for what the Atlanta lawyers did during discovery, and the court can only assume that it was duplicative or redundant. Accordingly, these hours have been deducted for failure to show that the work was necessarily and reasonably done in connection with the litigation.

The court's findings on the reasonable hourly rate per attorney and the hours reasonably expended are set out in the chart below:

COURT FINDINGS OF REASONABLE RATES AND HOURS

| Lawyer's Name | Hours | Rate | Fee |
|---|---|---|---|
| Ostfeld | 535 | $200/hour | $107,000.00 |
| Conley | 1,009 | $240/hour | 242,160.00 |
| Shull | 1,729.25 | $190/hour | 328,551.50 |
| Maag | 131 | $145/hour | 18,995.00 |
| Mirabel | 59 | $172/hour | 10,148.00 |
| Triantaphyllis | 193.5 | $172/hour | 33,282.00 |
| Other Texas associates | 416.25 | $135/hour | 56,193.75 |
| Taylor | 652.4 | $220/hour | 143,528.00 |
| Feil | 2.9 | $200/hour | 580.00 |
| Schaub | 34.4 | $185/hour | 6,364.00 |
| McCullough | 3.8 | $185/hour | 703.00 |
| Hankins | 49.1 | $115/hour | 5,646.40 |
| Other Georgia associates | 31.5 | $115/hour | 3,622.50 |
| TOTAL | 4,847.10 | | $956,849.40[7] |

*Norman* and the cases upon which it is based teach that after the lodestar fee is reached, there should be adjustments based on results obtained. Originally, Southern Bell was made a defendant in this case. Further, plaintiffs prosecuted a reapplication petition for claims before the patent office which were not necessary to the resolution of this case. Finally, plaintiffs included a number of counts that were later voluntarily dismissed. The court feels that a proportional reduction of the lodestar fee by ten percent would adequately reflect the extent to which hours were excessive on account of these unrelated or unsuccessful undertakings. Accordingly, attorney's fees in the amount of $861,191.46 are awarded.

Plaintiffs' counsel asks that the court enhance this amount because of the contingency of their fee relationship with their client. They have made no showing that such an enhancement is necessary to attract qualified counsel. Accordingly, that request is DENIED.

4. Defendants' Motion for Review of Taxing of Costs

*Federal Rule of Civil Procedure* 54(d) provides "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." In the case *sub judice*, plaintiffs are clearly the prevailing party, having obtained a jury verdict finding literal infringement of plaintiffs' patent and willfulness.

However, Rule 54(d) does not give the district judge "unrestrained discretion to tax costs to reimburse the litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). The Supreme Court has held that district courts are limited in the costs that may be reimbursed by the list of items set forth in 28 U.S.C. § 1920 and other related statutes. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). This policy was reasserted by the Supreme Court in the recent case of *West Virginia Univ. Hosp's, Inc. v. Casey*, which stated,

> In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 [107 S.Ct. 2494, 96 L.Ed.2d 385] (1987), we held that these provisions define the full extent of the federal court's power to shift litigation costs absent express statutory authority to go further … *Crawford* plainly requires as a prerequisite to reimbursement, the identification of "explicit statutory authorization."

7. The court realizes that some of the awards superficially exceed the amount claimed. The reason is that the claims of plaintiffs' counsel do not make an adjustment for the time value of money, whereas the court's fee awards take that into account.

*West Virginia Univ. Hosp's, Inc. v. Casey,* 499 U.S. 83, ——, 111 S.Ct. 1138, 1141, 113 L.Ed.2d 68 (1991). After *Crawford* and *Casey,* in order for a claimed expense to be reimbursed, the expense must be encompassed by § 1920 or some other specific statute. *Fulton Federal Savings & Loan Association of Atlanta v. American Insur. Co.,* 143 F.R.D. 292, 295 (N.D.Ga.1991).

Appropriate costs that may be taxed pursuant to 28 U.S.C. § 1920 include:

1) Fees of the clerk and marshal;

2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

3) Fees and disbursements for printing and witnesses;

4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

5) Docket fees under section 1923 of this title;

6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *Casey,* 499 U.S. at ——, 111 S.Ct. at 1140.

#### a. *Demonstrative Evidence*

■ Plaintiffs seek $3,486.20 in costs for the rental and setup of AV monitors, VCRs, and related equipment for use in the courtroom at trial.[8] In addition, plaintiffs seek to recover costs for photographs and movies of defendant's concrete texturing work conducted at the Southern Bell Building, in the amount of $1,468.03.[9] Most, but not all, of these photos and films were introduced at trial. Further, plaintiffs seek to tax $4,277.04 for the expense of demonstrative exhibits at trial, including charts, graphs, blowups, and a split-screen video of the patented and infringing process.[10] Finally, plaintiffs seek to recover $962.95 in costs for the "preparation and storage of sample panel for live demonstration at trial.".[11] This panel was never actually used at trial.

The court finds that all these costs represent various forms of demonstrative evidence that are properly discussed pursuant to the same legal standard.[12]

Plaintiffs argue that the videos shown and other demonstrative evidence were indispensable in explaining to the jury the patented process and defendant's infringement of that process. These costs should be allowed pursuant to 28 U.S.C. § 1920(4), as necessary costs for use in the case. Defendant argues that because § 1920 does not provide recovery for these demonstrative evidence fees, these costs should be disallowed.

Some circuits construe § 1920(4) as permitting an award for expenses of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials. *See e.g., E.E.O.C. v. Kenosha Unified School Dist.,* 620 F.2d 1220, 1226 (7th Cir.1980). The law governing the taxing of costs for demonstrative evidence in this circuit was established by the old Fifth Circuit case of *Johns–Manville Corp. v. Cement Asbestos Products Co.,* 428 F.2d 1381, 1385 (5th Cir.

---

8. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Costs at Exhibit C for copies of the rental invoices for the audio video equipment used at trial.

9. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Costs at Exhibit D for copies of the photography invoices for the making of the movie and still photographs taken of the Southern Bell Building.

10. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Costs at Exhibit E for copies of the invoice for the cost of obtaining various charts, graphs, blowups, and other demonstrative evidence.

The court notes that this invoice includes a Federal Express charge for overnight shipping of $104.00. Such charges are not recoverable costs under 28 U.S.C. § 1920 and are, therefore, disallowed. *Avirgan v. Hull,* 705 F.Supp. 1544, 1546–47 (S.D.Fla.1989); *Corsair Asset Management, Inc. v. Moskovitz,* 142 F.R.D. 347, 351 (N.D.Ga. 1992).

11. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Costs at Exhibit I for copies of the invoices for the preparing and storing of a "sample panel" to be used at trial.

12. Referring to items # 1–5 & 8 on plaintiffs' bill of costs.

1970).[13] The court held that because § 1920 does not provide for taxing the costs of charts, models and photographs, such costs may not be taxed without prior approval by the trial court.

Courts in this district have followed the reasoning of *Johns–Manville* and have focused on the necessity of the demonstrative evidence and on whether the prevailing party sought pretrial approval to allow the expense. *See United States v. Ernst & Whinney,* 557 F.Supp. 1152, 1156 (N.D.Ga.1983) (admission into evidence is a good indicator of necessity); *Jamison v. Cooper,* 111 F.R.D. 350, 352–53 (N.D.Ga.1986) (diagram of accident and photographs of scene were admitted into evidence in order to help jury understand relevant facts). Furthermore, the Eleventh Circuit impliedly approved the taxing of demonstrative evidence costs when it summarily approved the district court's taxing of costs in *Loughan v. Firestone Tire & Rubber Co.,* 749 F.2d 1519, 1526, n. 2 (11th Cir.1985) (permitting the taxing of costs for video equipment). The court held that the taxing of such costs was within the sound discretion of the court and that "trial courts are accorded great latitude in ascertaining taxable costs." *Id.* at 1526 (citing *United States v. Kolesar,* 313 F.2d 835 (5th Cir. 1963); 28 U.S.C. § 1920(2)).

However, these cases were decided before the Supreme Court's opinions in *Crawford* and *Casey.* Thus, the approach formerly used in this circuit pursuant to the reasoning in *Johns–Manville* and *Loughan,* which permits the use of demonstrative evidence with prior court approval and/or when necessary, is no longer appropriate. The Supreme Court specifically restricted the ability and discretion of the trial court to interpret § 1920, the basis upon which courts had permitted the taxing of demonstrative evidence in the past. *Crawford,* 482 U.S. at 442, 444–445, 107 S.Ct. at 2497–98, 2499. Absent explicit statutory authorization federal courts are limited to the express provisions of § 1920 permitting the taxing of costs. *Id.* at 445, 107 S.Ct. at 2499. Thus, the current standard for taxing costs requires the court to find an express provision of § 1920 or some other appropriate statutory provision which permits the taxing of the cost in question; then, and only then, does the trial court have discretion to determine whether the cost should actually be taxed.

Section 1920 permits costs to be taxed for certified copies of documents and copies of documents "necessarily obtained for. use in the case." Nowhere does § 1920 mention other types of evidence as a permissible cost. Nor is it reasonable to read § 1920 to exclude the specific reference to "papers," not videos, charts, tables, or otherwise, without "plain evidence of congressional intent to supersede those sections." *Crawford,* 482 U.S. at 445, 107 S.Ct. at 2499. Pursuant to *Crawford* and *Casey,* therefore, these costs are not taxable. *Casey,* 499 U.S. at ——, 111 S.Ct. at 1141; *Crawford,* 482 U.S. at 445, 107 S.Ct. at 2499; *see also Johns–Manville,* 428 F.2d at 1385 (referring to 28 U.S.C. § 1920, the court held that demonstrative evidence including models, charts and photographs are not encompassed by the statute). Although this is an admittedly strict and sometimes harsh interpretation of § 1920, it is fully consistent with the Supreme Court's "longstanding practice of construing statutes *in pari materia,*" which was specifically noted in the context of awarding costs in *Casey. Id.* Further, this protects against the "possible abuse of incurring oppressive costs by one party, *ex parte,* which may be taxed to his adversary." *Johns–Manville,* 428 F.2d at 1385.

Essentially, plaintiffs seek to be reimbursed for costs associated with providing videotape and picture evidence at trial. Plaintiffs choose to present this type of evidence, rather than documentary evidence, because plaintiffs believe this form of evidence will help its case before the jury. Nothing requires plaintiffs to present nondocumentary evidence. Although the court agrees that presenting evidence in these types of non-documentary format are often quite compelling and helpful to both the

---

**13.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981 unless overruled *en banc.*

court and the jury, Congress, however, has not specifically provided for the recovery of costs except for copies of exemplification and documentary evidence necessary for use in the case. Therefore, the court is compelled to interpret § 1920 narrowly, absent clear congressional intent to the contrary, and preclude the taxing of such costs.

Because § 1920 does not specifically encompass demonstrative evidence fees for use in the case, these costs are disallowed.

### b. Trial Transcripts

▆▆ Plaintiffs seek to tax $6,079.75 in costs for trial transcripts, as fees of the court reporter for "stenographic transcript necessarily obtained for use in the case."[14] 28 U.S.C. § 1920(2). Defendant objects, arguing that daily copying of transcripts is a mere convenience for the lawyers, not a necessity, and therefore should not be taxed. Plaintiffs counter by arguing that the daily copy of the trial transcript was necessary due to the severe passage of time, eleven years, since the beginning of the case and the date trial started in order to ensure that the record accurately reflected the events which had transpired; due to the complexity of the issues presented at trial; due to the length of the trial (one month); and due to the need to review thoroughly the trial transcripts in order to respond to defendant's post trial motions.

Regardless of the merits of obtaining a copy of the daily trial transcripts, plaintiffs' taxing of costs for a copy of the trial transcript in addition to the original must be denied, as any extra copy was not necessary and merely obtained for plaintiffs' convenience. *Fulton Federal Savings & Loan Association of Atlanta v. American Insur. Co.*, 143 F.R.D. 292, 299–300 (N.D.Ga.1991). Therefore, the first copy charges of $922.75 are disallowed. Plaintiffs' taxing of costs for the original copy of the daily transcripts of trial requires further examination.

Both the statute and interpreting case law permit a prevailing party to recover costs for daily copies of the trial transcript where the transcript is "indispensable." *Farmer,* 379 U.S. at 415–416, 85 S.Ct. at 555; 28 U.S.C. § 1920(2). By indispensable, the Court means that the transcripts were not obtained primarily for the convenience of the attorneys, but were necessarily obtained for use in the case. *Id.; Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128, 132 (5th Cir.1983); *In re Nissan Antitrust Litigation,* 577 F.2d 910, 918 (5th Cir.1978). Factors to be considered are the complexity of the issues tried, the length of the trial, and whether the attorneys are required to submit briefs and proposed findings to the court during trial. *Farmer,* 379 U.S. at 416, 85 S.Ct. at 555. This is true even after the *Crawford* holding restricted the district court's ability to interpret the provisions under § 1920. *See J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 760 F.2d 613, 615–16 (5th Cir.1985), *vacated and reinstated in relevant part,* 790 F.2d 1193, 1194 (5th Cir.1986), *aff'd,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (leaving undisturbed the lower court's holding permitting the taxing of costs for daily trial transcripts where necessarily obtained for use in the case).

Plaintiffs' arguments that the trial transcripts were necessary to provide an informed response to defendant's post trial motions is unconvincing, since the parties had agreed prior to trial, and, therefore, before either side could know of the necessity to respond to JNOV motions, to obtain a daily copy of the trial transcripts and to split the costs.[15] Clearly, there is merit to plaintiffs' concerns regarding the length of the case, length of trial, and complexity of the issues presented during trial. However, the court notes that plaintiffs' counsel had fully prepared for this case prior to trial, as evidenced by plaintiffs' bill of attorney's fees, which shows that plaintiffs' counsel spent 2,243.6 hours of work on "trial preparation." This amount of preparation should be more than enough to ensure that the record accu-

---

**14.** Referring to item #6 on plaintiffs' bill of costs. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Costs at Exhibit F for copies of the invoices for the daily trial transcripts.

**15.** No agreement or discussion occurred regarding the parties' rights to tax the cost of these transcripts after a judgment was reached.

rately reflected the events which had transpired. Therefore, the court finds that a copy of the daily trial transcript was not indispensable and necessary for use in the case. These costs are disallowed.

### c. Photocopies

■ Plaintiffs seek to tax $2,500.00 in photocopying charges.[16] Plaintiffs alleged that this is a conservative estimate of taxable charges pursuant to 28 U.S.C. § 1920(4). These charges represent the cost for two copies of pleadings, exhibits, and other documents formally submitted to the court. The first copy taxed represents the extra copy of pleadings filed with the court along with the original. The second represents the copy served on Beers. Plaintiffs arrived at the $2,500.00 figure by estimating that plaintiffs filed 250 pleadings with the court averaging twenty pages in length ($2 \times 250 \times 20 = 10{,}000$ pages) and then charging $0.25 per page copied ($10{,}000 \times 0.25 = \$2{,}500.00$).

Defendant objects to these costs, arguing that plaintiffs' estimate of the appropriate number of copies to tax is a mere guess and, therefore, should be rejected.

Section 1920(4) provides for the recovery of photocopy costs in certain circumstances. The party seeking the recovery of such costs must show that the copies were necessary and provided either to the court or the opposing party. This court recently stated the standard for recovering photocopy costs, stating:

> A prevailing party may be reimbursed for the cost of photocopying attributable to discovery if the charges are for "copies of pleadings, correspondence, and other documents tendered to the [opposing party]." *Fressell v. AT & T Technologies, Inc.,* 103 F.R.D. 111, 115 (N.D.Ga.1984). Charges for copies of exhibits and documents filed in support of motions, as well as copies of pleadings, memorandums and motions themselves, are also recoverable. *Id.* at 116. However, charges for copies of original documents possessed by the prevailing party are not taxable. *American Key*

*Corp. v. Cumberland Associates,* 102 F.R.D. 496, 499 (N.D.Ga.1984). Charges for extra copies and for documents prepared for convenience, preparation, research, or for the records of counsel are not taxable. *Fressell,* 103 F.R.D. at 116.

*Fulton Federal Savings & Loan Association of Atlanta v. American Insur. Co.,* 143 F.R.D. 292, 300 (N.D.Ga.1991); *see also DeSisto College v. Town of Howey-In-The-Hills,* 718 F.Supp. 906, 913–14 (M.D.Fla. 1989), *aff'd,* 914 F.2d 267 (11th Cir.1990) (movant must distinguish between copies for the convenience of counsel and those necessary for the case). The party seeking to recover photocopy costs must come forward with evidence showing the nature of the documents copied including how they were used or intended to be used in the case. *Id.* Simply making unsubstantiated claims that such documents were necessary is insufficient to permit recovery. *Id.* Without appropriate record evidence, the court may disallow such costs. *Id.* (citing *American Key Corp. v. Cumberland Associates,* 102 F.R.D. 496, 499 (N.D.Ga.1984)).

Here, although plaintiffs have provided information as to the purpose of the copies sought to be taxed, which does fall within the scope of permissible copies to be recovered pursuant to § 1920(4), plaintiffs have only provided the roughest of estimates as to how this number was derived.[17] This type of unsubstantiated estimate is insufficient to overcome defendant's objection. Therefore, the amount of $2,500.00 in costs taxed is disallowed.

However, plaintiffs may renew their request for these costs by filing a supplemental bill of costs which provides information as to the number of documents and pages copied, what types of documents were copied, who was in possession of the originals of these documents, what the purpose of copying these documents was, and why these copies were necessary for use in the case. In this particular case, the key is a more accurate estimate as to the number of pages of plead-

---

16. Referring to item #7 on plaintiffs' bill of costs.

17. Of course, this assumes that the copies sought to be taxed were in fact filed with the court and opposing counsel.

ings filed with the court and served on opposing counsel.

#### d. *Deposition Transcripts*

■ Plaintiffs' bill of costs, in items 11–26, seeks to recover the costs for every deposition transcript taken in this case.[18] Defendant argues that only those deposition transcripts necessarily obtained for use in the case are taxable pursuant to 28 U.S.C. § 1920(2). Therefore, defendant objects to items 12, 16, 18, and 20, arguing that plaintiffs have failed to show that these depositions were necessarily obtained for use in the case, because neither the witness nor the deposition was used at trial. All contested deposition transcript costs were originally charged to plaintiffs. It is not clear as to who was charged for the other depositions taken, as the plaintiffs have not filed receipts for those transcripts.

■ Pursuant to § 1920, deposition expenses may be recovered if the deposition was "necessarily obtained for the use in the case." *Fulton Federal,* 143 F.R.D. at 296 (quoting *Kolesar,* 313 F.2d 835). "[The] deposition need not be used at trial but must appear reasonably necessary at the time it is taken." *Id.* (citing *Allen v. United States Steel Corp.,* 665 F.2d 689 (5th Cir.1982); *O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 99 F.R.D. 578, 581 (N.D.Ga.1983)). However, where the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable. *Id.* at 296. Nor are expenses for copies of depositions recoverable if taken by the prevailing party. *Id.* at 296 (citing *Jamison,* 111 F.R.D. at 351; *George R. Hall, Inc. v. Superior Trucking Co.,* 532 F.Supp. 985, 995 (N.D.Ga.1982)). Deposition copying expenses are recoverable, however, when filed with the court at the opposing party's request "rather than in support of its own motion or presentation of the case." *Id.* Such copying charges are also "taxable if the deposition is used extensively in preparation for and at trial." *Id.* The cost of obtaining a copy of a deposition taken by an opposing

party is taxable. *Id.* (citing *Kolesar,* 313 F.2d 835; *Jeffries v. Georgia Residential Finance Authority,* 90 F.R.D. 62, 64 (N.D.Ga.1981)).

Because the court finds that the four contested deposition items were properly taken within the bounds of discovery and, therefore, "necessarily obtained for use in the case," the court finds the costs recoverable. Because defendant does not object to the taxing of the costs of the other deposition transcripts, they are allowed. However, the court notes that in each charge for deposition transcripts for which plaintiff has filed a receipt, plaintiffs are seeking to tax costs for both the original and one copy. The court assumes that all non-objected to deposition costs also included charges for one copy.

■ Plaintiffs may not recover the cost of copies of depositions plaintiffs took if the originals were not filed with the court at defendant's request. Plaintiffs also may not recover charges for more than one copy of depositions taken by defendant. The record does not show any request for filing depositions by defendant. Therefore, the court will reduce by half each charge taxed for deposition transcripts, whether objected to or not. Thus, plaintiff will recover costs for deposition transcripts in the amount of:

*Plaintiffs' Bill of Costs*

| Deposition Transcripts | Cost |
|---|---|
| Item 11 | $ 572.20 |
| Item 12 | 459.46 |
| Item 13 | $ 126.90 |
| Item 14 | 296.35 |
| Item 15 | $ 234.20 |
| Item 16 | 109.30 |
| Item 17 | $ 188.70 |
| Item 18 | 124.00 |
| Item 19 | $ 255.75 |
| Item 20 | 1,098.86 |
| Item 21 | $ 236.88 |
| Item 22 | 41.55 |
| Item 23 | $ 171.00 |
| Item 24 | 151.50 |
| Item 25 | $ 228.30 |
| Item 26 | 224.70 |
| TOTAL | $4,519.65 |

---

18. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Coasts at Exhibit G for copies of the invoices for these depositions.

Plaintiffs may renew their request for deposition costs for the copies of depositions taken by filing a supplemental statement with the court showing for each deponent (1) on whose behalf the deposition was taken, (2) whether the other party requested that the original be filed with the court, (3) a breakdown of the charges by original and copy for each deponent, (4) the amount of each charge paid by plaintiffs.

### e. *Witness Travel Fees*

■ Defendant objects to items 28, 30, and 32 of plaintiffs' bill of costs for travel expenses for the witnesses to and from trial.[19] Defendant argues that plaintiffs have failed to meet their burden to show "exceptional circumstances," as required to permit the taxing of travel expenses beyond the 100–mile limit from the courthouse. Further, plaintiffs have provided no reason why they could not have obtained similar testimony from witnesses in the Atlanta area.

Plaintiffs argue that the travel costs were reasonable and have now provided airline ticket receipts to verify the costs.[20] Had plaintiffs obtained expert witnesses in Atlanta rather than Houston, the costs of preparing for trial would have been far higher. This position is supported due to the complexity of the case and plaintiffs' need to be in frequent contact with the experts, which would have been far more difficult and costly had they not been in close physical proximity to plaintiffs' counsel. Further, plaintiffs argue that Mr. Kirk was uniquely qualified to serve as plaintiffs' technical expert because of his familiarity with Mr. Gooden and his patented process.

Fees for witnesses are permitted to be taxed as costs pursuant to 28 U.S.C. § 1920(3). *Crawford*, 482 U.S. at 440, 107 S.Ct. at 2497; *Goodwin Bros. Leasing, Inc. v. Citizens Bank*, 587 F.2d 730, 734 (5th Cir.1979); 28 U.S.C. § 1920(3). "The witness fee specified in § 1920(3) is defined in 28 U.S.C. § 1821." *Id.* Section 1821 permits a witness to recover the actual expenses of traveling to court to testify and back, where the commercial fare is reasonable and documented.[21] "Historically, the courts have held that the power to tax costs for travel expenses was limited to the area in which the court could issue subpoenas." *Goodwin Bros.*, 587 F.2d at 734 (footnote omitted) (the 100–mile rule). The Supreme Court rejected a strict application of the 100–mile rule, and provided the trial court with the discretion to determine the appropriate amount of travel costs allowed to be taxed. *Id.* (citing *Farmer*, 379 U.S. at 232, 85 S.Ct. at 415). The rule today is that travel expenses are limited to the 100–mile rule absent "special circumstances." *Id.; O'Donnell*, 99 F.R.D. at 580. Factors to consider when applying the "special circumstances" rule include "the relevance and necessity of the witnesses' testimony [Cits.], and the existence of court approval before incurrence of travel expenses," *Goodwin Bros.*, 587 F.2d at 734, as well as the fact that the movant seeking the taxing of costs "could not have obtained similar testimony from witnesses residing closer." *O'Donnell*, 99 F.R.D. at 580. By necessary and material the court means that the testimony is not redundant or cumulative. *Id.*

In the case *sub judice*, the court finds that plaintiffs have met their burden to prove

19. These costs represent travel expenses, specifically airfare for plaintiffs' expert witnesses. Mr. Kirk was plaintiffs' technical expert, Mr. Knowlton their damage expert, and Mr. Pravel their patent law expert. Plaintiffs' witness fees charges, items # 27, 29, 31, have not been objected to.

20. *See* Plaintiffs' Opposition to Defendant's Motion for Review of Taxing of Coasts at Exhibit H for copies of the airline ticket receipts for the expert witnesses.

21. Section 1821 reads in pertinent part:
 (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the

United States, ... shall be paid the fees and allowances provided by this section.

· · · · ·

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.
28 U.S.C. § 1821.

**1068**

special circumstances. Plaintiffs have articulated reasonable rationales for desiring to have their expert witnesses located in Houston rather than Atlanta. In this case such a situation would ultimately reduce litigation expenses for the parties. Further, these expert witnesses appear to have been necessary and material to plaintiffs' case. Nor has defendant alleged otherwise. Although it may have been preferable to obtain prior court approval to exceed the 100–mile rule, this should not preclude the taxing of the reasonable airline costs for the expert witnesses that have been adequately substantiated. Plaintiffs will be permitted to recover these costs.

### f. *Expert Witness Fees*

■ Within plaintiffs' request for attorney's fees, plaintiffs have filed a request to recover fees and expenses incurred for their expert witnesses. This request is properly considered as a cost to be taxed rather than a component of attorney's fees. Plaintiffs seek $16,140.19 for the fees and expenses of Mr. B.R. Pravel; $25,997.00 in fees and expenses for Mr. Stephen H. Knowlton; and $13,506.00 for fees and expenses for Mr. Robert D. Kirk, Jr. Mr. Pravel was plaintiffs' patent law expert, Mr. Knowlton their damage expert, and Mr. Kirk their technical expert.

The Supreme Court has recently held that the recovery of expert witness fees is limited to the statutory rate for testimony services and precludes any fees for non-testimonial services absent some explicit statutory authority. *Casey,* 499 U.S. at ——, 111 S.Ct. at 1140–41. As the plaintiffs have already taxed the costs permitted for their expert witnesses who testified at trial, pursuant to the appropriate statutory authority contained in 28 U.S.C. §§ 1821(b) and 1920(3), and because plaintiffs have cited no other statutory authority permitting the recovery of expert witness fees in this case, plaintiffs' request to tax the costs of their expert witnesses is disallowed.

### g. *Summary*

Defendant's motion to retax costs is GRANTED IN PART and DENIED IN PART. The Clerk of Court is DIRECTED to tax only the following costs against defendant:

*Plaintiffs' Bill of Costs*

| Description | Holding | Amount |
| --- | --- | --- |
| Item 1 | Disallowed | $ __.__ |
| Item 2 | Disallowed | __.__ |
| Item 3 | Disallowed | $ __.__ |
| Item 4 | Disallowed | __.__ |
| Item 5 | Disallowed | $ __.__ |
| Item 6 | Disallowed | __.__ |
| Item 7 | Disallowed | $ __.__ |
| Item 8 | Disallowed | __.__ |
| Item 9 | Allowed | $ 15.00 |
| Item 10 | Allowed | 10.48 |
| Item 11 | Allowed | $1,144.40 |
| Item 12 | Allowed | 459.46 |
| Item 13 | Allowed | $ 253.80 |
| Item 14 | Allowed | 592.70 |
| Item 15 | Allowed | $ 468.40 |
| Item 16 | Allowed | 109.30 |
| Item 17 | Allowed | $ 377.40 |
| Item 18 | Allowed | 124.00 |
| Item 19 | Allowed | $ 511.50 |
| Item 20 | Allowed | 1,098.86 |
| Item 21 | Allowed | $ 473.75 |
| Item 22 | Allowed | 83.15 |
| Item 23 | Allowed | $ 342.00 |
| Item 24 | Allowed | 303.00 |
| Item 25 | Allowed | $ 456.60 |
| Item 26 | Allowed | 449.40 |
| Item 27 | Allowed | 30.00 |
| Item 28 | Allowed | $ 695.00 |
| Item 29 | Allowed | 30.00 |
| Item 30 | Allowed | $ 500.37 |
| Item 31 | Allowed | 30.00 |
| Item 32 | Allowed | $ 662.00 |
| TOTAL | | $9,220.57 |

Further, plaintiffs are GRANTED leave to file a supplemental statement renewing plaintiffs' request to tax costs. Plaintiffs' statement must be limited to providing the documentation required by this order. Any such statement must be filed within ten (10) days of the entry of this order. Defendant shall have ten (10) days to respond. This is not an invitation to reargue the merits of defendant's objections.

### III. CONCLUSION

Thus, defendant's motion to hold the patent unenforceable [# 89–1] is DENIED. Defendant's motion for judgment notwithstanding the verdict [# 91–1] or a new trial [# 91–2] based on the jury verdict finding that the infringement was willful is DE-

NIED. Defendant's motion for judgment notwithstanding the verdict or a new trial [# 92–2] based on the jury verdict on the issue of literal infringement is DENIED. Defendant's motion for judgment notwithstanding the verdict [# 93–1] or a new trial [# 93–2] based on the jury finding regarding lost profits is DENIED. Plaintiffs' motion to amend the judgment [# 94–1] is GRANTED. Plaintiffs' motion for award of attorney's fees [# 95–1] is GRANTED. Plaintiffs' motion for judgment notwithstanding the verdict based on the jury verdict regarding the issue of infringement under the doctrine of equivalents [# 96–1] is GRANTED. Plaintiffs' motion in the alternative for a new trial [# 96–2] is DENIED as moot. Defendant's motion for a review of the taxing of costs [# 110–1] is GRANTED IN PART and DENIED IN PART.

SO ORDERED.